BAKER *v.* ALLEN.

Opinion delivered March 11, 1899.

1. DAMAGES—OBSTRUCTING FLOW OF SURFACE WATER.—It is only where a landowner obstructs the natural flow of surface water unnecessarily, when by reasonable care and expense he might have avoided such injury, that he becomes liable to an upper proprietor for the damages thus occasioned. (Page 275.)

2. NUISANCE—LIABILITY OF LANDLORD.—A landlord, having no possession or control of the demised premises, will not be liable for the act of his tenant in so obstructing the natural flow of surface water that the land of an upper proprietor is flooded, if he neither licensed nor consented to such obstruction. (Page 276.)

3. OBSTRUCTION TO SURFACE WATER—WHEN NOT PERMANENT.—A levee composed of dirt, less than two feet high, and only a few feet thick, is not such a permanent obstruction to the flow of surface water as will justify the award of prospective damages. (Page 277.)

4. PRACTICE IN SUPREME COURT—FAILURE TO SET OUT INSTRUCTIONS IN ABSTRACT.—Where appellant failed to set out the instructions of the circuit court in his abstract and brief, as required by rule 9 of this court, no costs for such abstract and brief will be taxed in case of a reversal. (Page 278.)

Appeal from Lawrence Circuit Court, Eastern District.

RICHARD H. POWELL, Judge.

STATEMENT BY THE COURT.

J. F. Allen owned a tract of land in Independence county adjoining a tract owned by R. L. Baker. Baker's tract lay south of Allen's land. Both tracts were nearly level bottom lands, subject at times to overflow from White river. A swale or slight depression extended across a portion of Allen's land, and also across Baker's land. There was no creek or stream, but the surface water from a portion of Allen's land, and also from other lands lying above Allen's lands, drained off along this swale over Baker's land. To protect his land from this surface water flowing from Allen's and adjacent lands, a previous owner of the Baker tract had constructed a small levee, about eighteen inches high and two or three hun-

dred feet long, across this swale near the upper portion of the Baker tract, and only a short distance from the south side of the Allen tract. The effect of this levee was, in wet seasons, to hold back the surface water upon a portion of Allen's land, and render it wet and unfit for cultivation. This levee was afterwards cut, and an opening made sufficient to allow the water to pass off from Allen's land. It was in this condition in 1890 when Baker became the owner of the land, and remained cut until 1894. Baker rented his land to one Busby for that year, and in February, 1894, Busby closed up the opening in the levee, and some of the witnesses say that he also made the levee longer and higher. Shortly afterwards, Hart, a tenant of Allen, complained to Baker that the levee had been closed, and asked permission to cut it. Baker told Hart he could do so, but Busby, to whom the land was rented, refused to have the levee cut, and it remained closed during the year 1894. In August of that year Allen brought this action against Baker, alleging that on the 1st day of February, 1894, he wrongfully and negligently caused to be constructed a levee across the swale or depression running through the land of plaintiff and defendant, and thereby caused the water to back upon and overflow a large quantity of plaintiff's land, to-wit, thirty or forty acres, more or less, causing said land to become wet and unfit for cultivation, to plaintiff's damage in the sum of one thousand dollars, for which he asked judgment. Baker filed an answer, denying the material allegations of the complaint.

On the trial the circuit judge gave the following instructions to the jury (the first six of which were objected to by defendant, and the two last were given at request of defendant):

"1. The issue to be settled in this case is, was the obstruction of the embankment or levee complained of, any injury to the plaintiff's property for which he had a right to hold the defendant responsible? And, if so, how much has been the damage?

"2. To entitle the plaintiff to recover, it must be proved, to the satisfaction of the jury, that the defendant, in building or causing said embankment or levee to be constructed, or some part of the works in connection therewith, so obstructed or im-

peded some natural flow of water by erecting an embankment across said stream or natural flow in such manner as to cause the same to overflow the premises of the plaintiff.

"3.   If the evidence in the case shows, to the satisfaction of the jury, that there was a natural flow and drainage of the water, accumulating by rainfall or otherwise from the surrounding country, by which the water in its natural flow was carried off from the lands of the plaintiff across the lands of the defendant, and that, by the erection of the embankment complained of, the flow was prevented, and land of the plaintiff caused to be overflowed, then the defendant would be responsible in damages to plaintiff, to the extent of the injury caused thereby to his property.

"4.   Although the levee or embankment complained of had been built more than three years before the commencement of this action, if, after it was so built or constructed, the same had been cut, so as to avoid any obstruction by said embankment, and afterwards the defendant filled up said cut, or caused the same to be filled, so as to overflow the plaintiff's land, the statute of limitation would begin to run, for the purpose of this suit, only from the time of filling said cut.

"5.   In estimating the damage, the jury can only consider the value of the lands and premises injured at the time the injury complained of was done, and compare it with what the value would have been if the overflow had not been caused, and fix the damages at the difference between the two values.

"6.   The jury are instructed that, if they find from the evi dence that complaint was made to the defendant by the plaintiff or his tenant of the damages caused by the levee on his place, it was his duty to have it abated or removed, and, if he failed so to do, he would be as responsible as if he had ordered it originally, for all damages that resulted therefrom after he was so notified.

"7.   The jury are instructed that a landowner has a right to erect a levee or embankment on his lands to improve them for the purposes for which the lands are naturally suited, and prevent surface water, such as rainfalls, melting snows, ice and such waters, flowing on to his lands.   And if you find from

the evidence that the defendant's lands are adjacent to plaintiff's lands, and are suited for agricultural purposes, and that the defendant maintained the levee complained of wholly on his own lands to protect his lands from surface waters, such as rainfalls, melting snows, ice, etc., flowing on to them, to improve them for agricultural purposes, with no malicious design or evil intent to damage the plaintiff, you will be authorized to find for the defendant.

"8. The jury are instructed that a landowner, in the use and improvement, and for the enjoyment, of his own lands, has a right at pleasure to obstruct or hinder by embankment, levee or other means the natural flow of mere surface waters onto his lands, and turn the surface water back onto the lands from which they came, without liability for any injury arising from such obstruction, provided the levee or obstruction be made in good faith, and in the enjoyment and for the greater usefulness of his own lands."

There was a verdict and judgment in favor of plaintiff for the sum of two hundred dollars.

*Otis W. Scarborough* and *Phillips & Campbell*, for appellant.

As the cause of the damage is not in its nature permanent, a recovery can be had only to date of suit. 5 Am. & Eng. Enc. Law, 16; 57 Ark. 387; 65 Mo. 359; 52 Ark. 240. The sixth instruction given for plaintiffs was unsupported by evidence. 57 Ark. 513; 49 Ark. 60; 56 Ark. 380. The landlord was under no obligation to abate the nuisance placed on the land, without his authority, by the tenant. L. R. 4 C. P. 198; Taylor, L. & Ten. § 175; 12 Am. & Eng. Enc. Law, 690; 32 O. St. 264; 63 Ark. 593; 56 Ark. 380. The tenant, if any one, was responsible. 40 Mich. 164. Only a tenant in possession can sue for temporary damage to his possession and enjoyment of the premises. 63 Ark. 251; 63 Ark. 536.

*Elisha Baxter* and *Chas. Coffin*, for appellee.

The erection of the dam was in the nature of a permanent injury to the land. As the dam was on appellant's land, appellee could not enter to remove it, and this suit was proper. 5 Am. & Eng. Enc. Law, 20.

RIDDICK, J., (after stating the facts.)   This is an action to recover damages for the obstruction of the natural flow of surface water, caused by the construction of a levee across a swale or depression which extended across the lands of both plaintiff and defendant, and along which the surface water passed in times of rain and melting snow.   These lands, at rare intervals, were subject to overflow from White river, but it was not shown that the levee caused injury by holding back the flood waters which came from the river.   The injury, if any, arose from the obstruction of ordinary surface water only.

At the common law, each proprietor had the right to protect his land against surface water flowing upon his soil, and, under the strict rules of that law, plaintiff would have no right of action.   But this court, after what seems to have been a full consideration of the question, adopted a rule materially different from that of the common law.   In the case of *Little Rock & Ft. S. Ry. Co.* v. *Chapman*, 39 Ark. 463, it held that the right of a landowner to obstruct the natural drainage or flow of surface waters was not absolute, and that if such proprietor unnecessarily injure the land of upper proprietors by the erection of an embankment or levee, when by reasonable care and expense he might have avoided the injury, he becomes liable for damages thus occasioned.   The rule, as declared by this court, is similar to that followed by the courts of several of the states. Speaking of this question, Judge Dillon, of the supreme court of Iowa, said:   "We recognize the fact, to use Lord Tenderden's expression, that surface water or slough water is a common enemy which each landowner may reasonably get rid of in the the best manner possible; but, in relieving himself, he must respect the rights of his neighbor, and cannot be justified by an act having the direct tendency and effect to make that enemy less dangerous to himself and more dangerous to his neighbor. He cannot make his estate more valuable by an act which unnecessarily renders his neighbor's less valuable."   *Livingston* v. *McDonald*, 21 Iowa, 160.

The instructions given by the circuit judge in this case do not state the law correctly, for they are to the effect that the defendant had no right under any circumstances to obstruct "a natural flow or drainage of water."   There is no pretense or

claim here that the defendant obstructed a stream or watercourse. The levee was constructed across a slight but broad depression, along which the surface water was drained from lands of upper proprietors. But the court, in the third instruction, told the jury that "if the evidence in the case shows to the satisfaction of the jury that there was a natural flow and drainage of water accummulating by rainfall or otherwise from the surrounding country, by which the water in its natural flow was carried off from the lands of the plaintiff across the lands of the defendant, and that, by the erection of the embankment complained of, the flow was prevented, and land of the plaintiff caused to be overflowed, then the defendant would be responsible in damages to the plaintiff, to the extent of the injury caused thereby to his property." This instruction seems to have been copied from one given by the circuit judge in case of *L. R. & Ft. S. Ry. Co.* v. *Chapman, supra*. But this court said in that case that, in order to recover, the obstruction must be shown to have been unnecessary, and called attention to the defect in the instruction. It, however, affirmed the judgment, for the reason that there was in that case a special finding that the obstruction was unnecessary. Now, under the rule established in that case, if the landowner, by the use of a ditch or drain, instead of a levee, could protect his own land from water, and avoid injury to the adjoining proprietor, he should do so. But he would not be required to go to an unreasonable expense to protect the lands of the adjoining proprietor, and would not be liable for damages occasioned by holding back surface water if such levee was the only practical method of protecting his lands' from such surface water. *L. R. & Ft. S. Ry. Co.* v. *Chapman*, 39 Ark. 463. This third instruction seems also in conflict with the seventh and eighth instructions, which were too favorable to defendant. Neither of these instructions stated the law correctly, and, taken together, tended to confuse and mislead the jury.

The landlord's right to possession being usually suspended during the term of the lease, his liabilities in respect to the possession are, as a general rule, suspended as soon as the tenant takes possession. It follows that, for a nuisance committed by the tenant during his term, the landlord, as a general

rule, is not liable; for he has no legal means of abating the nuisance. He cannot interfere with the possession of the tenant for that purpose, but, when the term expires, he has then the right of entry and power to abate the nuisance, and if he fails to do so his liability commences. *Ingwersen* v. *Rankin,* 47 N. J. Law, 18, 54 Am. Rep. 109.

We are therefore of the opinion that the judge should, as requested by defendant, have told the jury that if the defendant had rented his land to Busby during the year 1894, and had neither possession or control over the same, he would not be responsible for the act of his tenant in closing the cut in the levee, if he neither licensed or consented to said act. If Busby was the agent or manager of defendant, and acting for him, the defendant would, of course, be responsible for his acts done within the scope of his agency. But if Busby had rented the land during 1894, and had exclusive possession and control over same, defendant would not be liable for his act in closing the levee, unless he advised or licensed the same, or unless he afterwards renewed the lease or granted another lease with the levee in such condition. 2 Wood's Landlord & Tenant, (2 Ed.) § 526; 1 Taylor's Landlord & Tenant, (8 Ed.) § 175; *Haizlip* v. *Rosenberg*, 63 Ark. 430.

The levee complained of in this case was composed of dirt, and less than two feet high, and only a few feet thick. It could easily be cut and opened so as to allow the passage of water. It was not a part of a railroad bed or other permanent structure. It had been cut and opened for the passage of water, and so remained for several years until 1894. It was closed by the tenant who occupied the place for that year, to protect the land from surface water during that year. When we consider the ease with which this small embankment could be opened or closed, and also the purpose of the tenant in closing the same, it seems clear that the act of such tenant did not constitute a permanent injury to plaintiff's land. The opposite view might make the defendant liable for large sums in the way of prospective damages, even though there was no intention to permanently close the levee, and though he should wish to remove the obstruction and obviate the injury. As the levee could easily be opened, and such prospective injury avoided, it would

be unjust, as well as unreasonable, under such circumstances, to presume conclusively that the nuisance would be continued, and the injury made permanent. *Mitchell* v. *Darley Main Colliery Co.*, L. R. 14 Q. B. Div. 125; *Uline* v. *N. Y. O. & H. R. R. Co.*, 101 N. Y. 98.

We think, therefore, as the complaint alleges the levee to have been erected in 1894, and as this action was commenced in that year, the recovery must be limited to such damages as accrued up to the bringing of the action. We are therefore of the opinion that the court erred in his instruction defining the measure of damages. For the errors indicated, the judgment is reversed, and a new trial granted.

As the appellant did not set out the instructions of the court in his abstract, as required by the rule of this court, no costs will be taxed for such briefs.

CHIEF JUSTICE BUNN and MR. JUSTICE BATTLE concur in the judgment of reversal.