McCoy v. Board of Directors of Plum Bayou Levee District.

Opinion delivered June 13, 1910.

1. Waters—right to defend against flood waters.—The flood waters of a river are a common enemy which any landowner may defend against without incurring liability for damages unless injury is unnecessarily inflicted upon another which by reasonable effort and expense could be avoided.   (Page 349.)

2. Levees—liability for causing overflow of adjacent land.—A levee district may rightfully build its levee across depressions, swales and low places so as to prevent the escape of flood water from a river into surrounding low lands sought to be protected, though it has the effect of raising the water higher on lands between the levee and river, without becoming liable to the owner of such intervening lands so damaged. (Page 351.)

3. Same—Damage to private property—liability.—A levee district, which builds a levee so as to protect lands from overflow of the waters of a stream at floodtime, will not, under Const. 1874, art. 2, § 22, providing that private property shall not be "damaged for public use without just compensation therefor," become liable for injuries to land lying between the levee and the river resulting from the flood water being raised higher between the levee and the river than before the levee was constructed.   (Page 352.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace*, Judge; affirmed.

*Crawford & Hooker* and *Austin & Danaher*, for appellant.

Private property shall not be taken, appropriated or *damaged* for public use without just compensation therefor. Const., art. 2, § 22. The construction of the levee was virtually a condemnation of appellant's land to public use.   13 Ark. 198; 80 U. S. 166; 188 U. S. 445. River water in times of ordinary floods is not surface water.   25 L. R. A. 527; 44 O. St. 279; 8 Barn. & C. 355. It is still a part of the river.   87 Ga. 246; 13 L. R. A. 397; 3 Bligh (N. S.) 414; 12 Gratt. 322; 65 Am. Dec. 247. Appellee had no right to erect a levee that would injure appellant.   55 Mo. 462; 84 Ia. 107; 15 L. R. A. 630; 48 N. H. 9; 97 Am. Dec. 561; 2 Am. R. 165; 135 N. Y. 116; 17 L. R. A. 426; 38 Minn. 212; 59 Barb. 413; 66 Hun 569; *Id.* 835; 7 Lea 388; 16 Ore. 165.

*W. F. Coleman*, for appellee.

The damages to appellant's land are too remote to constitute a cause of action.   73 Cal. 125; 2 Am. St. R. 775; 8 Barn.

& C. 355; 62 Ia. 326; 99 Ind. 205; 73 Ind. 283; 11 La. Ann. 165; 34 *Id.* 494; 11 *Id.* 370; 90 Pa. St. 85; 35 Am. R. 632. There is no common-law liability in such cases.   39 Ark. 472; 66 Ark. 271; 27 L. R. A. 762.

McCulloch, C. J.   Plum Bayou Levee District was created by an act of the General Assembly in 1905 for the purpose of constructing a levee along or near the east bank of the Arkansas River, in the counties of Pulaski, Lonoke and Jefferson, to protect the lands embraced in the specified territory from inundation of waters of that river.   The levee constructed pursuant to the creation of the district is 42 miles long, commencing in Pulaski County about the head of Plum Bayou, and extending into Jefferson County, within two miles and a half of what is known as Rob Roy bridge.   The levee is a solid, continuous embankment, of sufficient height and width to prevent the spread of waters overflowing from the Arkansas River.   It protects from overflow about 270,000 acres of fertile land, a considerable portion of which is improved and in a high state of cultivation.   The general direction of the river course in front of the levee is south, but there is a wide reverse bend which changes the local course east and west, and the levee is constructed across the bend instead of following it.   Plaintiff, Mrs. Sallie E. McCoy, owns land embracing three hundred acres in cultivation, fronting on the east bank of the Arkansas River, and situated at the lower end of the reverse bend and in front of the levee—that is to say, between the river and the levee.

After the levee was constructed, and after the overflow of 1908, plaintiff instituted this action against Plum Bayou Levee District to recover damages for alleged injuries done to her land by reason of the construction of the levee.   She alleged in the complaint that the levee was constructed across two streams, known as Gar Slough and Plum Bayou, and stopped up said streams so that no water can pass from them into the Arkansas River, or from the river into those streams; that said streams are well-defined, natural streams, with clearly marked banks and beds, and carry well-defined and constant flow of water; that, until the levee was constructed by defendant, when the river reached flood stage Gar Slough and Plum Bayou would drain the water from the Arkansas River, thus relieving the river from a vast volume of water at flood stage at points above plain-

tiff's land, thereby relieving the main channel of the river to such an extent that, even in the highest flood ever known, plaintiff's land was secure from overflow; that after the construction of the levee, the natural outlet of flood water through Gar Slough and Plum Bayou being obstructed as aforesaid, so that all the water coming down the Arkansas River was confined to the main channel of the river and the lands lying between the river and the levee, it thereby caused the water to rise at least six feet higher on those lands than it would have risen if the escape of water through Gar Slough and Plum Bayou had not been obstructed; that, on account of said raising of the waters at flood stage, the lands of plaintiff during the overflow of 1908 were permanently damaged, and the crops thereon destroyed.

Defendant in its answer denied that Gar Slough is a well-defined, natural stream with clearly marked banks and beds, or that it carries a well-defined and constant flow of water; but that said slough is a depression or swag about one and one-fourth miles in width, about 15 or 16 miles north of plaintiff's land, and carries no water except in wet seasons, and has no natural flow or outlet except the common territory comprising the Plum. Bayou Levee District; that, since the construction of the levee, said slough is in as high a state of cultivation as is common to the remaining vast territory situated behind the levee. Defendant admitted that Plum Bayou is a natural stream with natural banks, and in most seasons contains water, said stream having its source many miles north of plaintiff's land and running generally in a southeasterly direction from the Plum Bayou Levee District community into the Arkansas River several miles below the end of the levee. It denied that it has constructed its levee across Plum Bayou, but that the levee at the point mentioned in the complaint is constructed about 500 feet west of Plum Bayou, across a cut-off extending from the Arkansas River to said bayou, which cut-off, prior to the construction of the levee, contained water only in very wet weather, and the bayou, which is a sluggish stream, was unable to hold within its banks the increasing volume of water, thereby causing water from the bayou to overflow into and through the cut-off into the Arkansas River. Said cut-off is situated about four miles north of plaintiff's lands. It denied that when the river reached

a flood stage the said two streams, or either of them, was suffi-
cient for and did in fact drain the water from the Arkansas
River, or that such so-called streams were the natural drainage
for water from the Arkansas River, or that they or either of
them relieved the Arkansas River at flood stage from the vast
volume of water at points above plaintiff's land, thereby so re-
lieving the main channel of the river as to secure the plaintiff's
land from overflow, as alleged, or that the construction of the
levee, as alleged, has so stopped up and cut off the flood waters
of the river as to cause the water in the river to rise not less
than six feet higher than it would have risen had the levee not
stopped up and cut off the said so-called streams.

There was another issue in the case, as to the damage to
plaintiff's land actually used in the construction of the levee,
but that was settled by the verdict of the jury awarding a
certain amount to plaintiff, and it passed out of the case, so far
as concerns its consideration here.  The verdict was in favor
of defendant on the issue of damage for raising the flood water
on the land.

The testimony was conflicting, but there was sufficient to
sustain defendant's contention as to the situation of Gar Slough
and Plum Bayou and the effect of the construction of the levee
upon the flow of water.  It shows, too, that, in order to protect
the land within the bounds of the district, it was necessary to
build the levee across the depressions which permitted flood water
to pass through to the surrounding low lands of the district.
Plaintiff's land was, according to the evidence, subject to over-
flow before the construction of the levee.  But the water rose
higher on it in 1908 after the construction of the levee; and
the evidence establishes the fact that the land was seriously and
permanently injured by the overflow of 1908.

Plaintiff requested the court to give instructions which
in substance stated the law broadly to be that she would be
entitled to compensation for damages done to her land by rea-
son of the levee having been built so as to prevent the escape
of flood water through Gar Slough and Plum Bayou, and con-
fine its flow to the channel of the river and to the space between
the levee and the river.  The court refused to so instruct the
jury, but instructed that defendant was not liable for the con-
struction of the levee unless it be found that the slough and bay-

ous obstructed were natural outlets of the river, and were of sufficient capacity to have relieved the river from the increased flood water which caused the injury to plaintiff's land. The question is therefore presented whether or not, for the protection of lands from inundation by the flood waters of a river, a levee may rightfully be built across depressions, swales and low places so as to prevent the escape of the flood water into surrounding low lands sought to be protected; and also whether or not, in order to prevent the spread of flood water and to protect lands which would otherwise overflow, the building of a levee which has the effect of raising' the water higher on the lands between the levee and the river calls for compensation to the owner of such lands thereby damaged.

The solution of these questions is not free of· difficulty, and there are but few decisions of the court which shed much light on them. The first inquiry would seem to be as to the characterization of flood waters overflowing a stream, to return again as they recede—whether they should be treated as surface water or as running water of the stream. But we are not sure that such an inquiry is essential to a solution of the question now presented, for, without calling it surface water, we may treat it, like surface water or the waters of the sea, as a common enemy which any landowner or body of landowners or public agency may defend against without incurring liability for damages unless injury is unnecessarily inflicted upon another which, by reasonable effort and expense, could be avoided. *Little Rock & Ft. S. Ry. Co.* v. *Chapman,* 39 Ark. 463; *Baker* v. *Allen,* 66 Ark. 271.

The rule established by the English cases is that waters of the sea are a common enemy and may be warded off by artificial mthods without incurring liability for damages to another. In *Rex* v. *Commissioners,* 8 Barnewall & Cresswell, 355, commissioners had, for the purpose of protection of property entrusted to their care, erected works which cause the sea water to flow with greater force against and injure the land ·of another which fronted on the sea. Lord Tenterden, delivering the opinion, said: "But the sea is a common enemy to all proprietors on that part of the coast, and I can not see that the commissioners, acting for the common interest of several landowners, are, as to this question, in a different situation from any in-

dividual proprietor. Now, is there any authority for saying that any proprietor of land exposed to the inroads of the sea may not endeavor to protect himself by erecting a groyne or other reasonable defense, although it may render it necessary for the owner of the adjoining land to do the like? I certainly am not aware of any authority or principle of law which can prevent him from so doing. * * * I am, therefore, of opinion that the only safe rule to lay down is this: that each landowner for himself, or the commissioners acting for several landowners, may erect such defenses for the land under their care as the necessity of the case requires, leaving it to others in like manner to protect themselves against the common enemy."

The Supreme Court of Mississippi had this to say, which we think is pertinent in the present case: "It is not of controlling importance to hold that the flood water from which the plaintiff claims to have suffered be dealt with as surface water, or as the water of a stream, or as a separate and distinct sort. It can not be the law, however, in this State that the flood waters of the large streams which are within or along the borders of this State are to be dealt with as the waters of a stream, not to be obstructed, impeded or turned aside under any circumstances, except upon condition that the persons so doing shall respond in damages for all injury sustained by another riparian owner, and be liable for nominal damages as for the infringement of the legal rights of adjacent proprietors who in truth suffer no real injury. * * * If the waters of the Mississippi River, which at flood sometimes spread in width from twenty to forty miles, and flow in a continuous and unbroken body down the valley, are to be dealt with as the waters of a stream, and the whole valley is to be given up as the course way of the stream, the most fertile portion of our State may at once be abandoned. From Memphis to Vicksburg, and from the foothills to the river, there is not a square yard of land that was not deposited by the overflowing waters of the river. If the course usually pursued by the ordinary flood waters is the channel of the stream, the whole valley is the channel. It is evident that to so declare would be to announce as a positive rule of law, and as an undisputable fact, that which is not true, and which, if put into practical operation, would relegate prosperous and fertile districts to the condition of a wilderness.

There are farms innumerable, and railroads, villages, towns and cities situated in a watercourse, if the usual flow of the flood waters of the Mississippi River mark and define the course of that stream. It is manifest that to apply the strict rules of law controlling in cases of streams and the obstructions thereof to such river and such conditions is, in the very nature of things, impracticable and impossible. Calling these overwhelming floods 'surface' or 'channel' water for the purpose of dealing with them under rules applicable to entirely different conditions, advances us no step in the solution of the questions involved. We must deal with things, and not names, and conditions inherently and radically different can not be assimilated by mere terminology." *Kansas City, M. & B. Rd. Co.* v. *Smith,* 72 Miss. 677, 27 L. R. A. 762.

There is a decision of the Supreme Court of California which is directly in point, the facts of the case and conclusion of law reached by the court in the case being stated in the syllabi as follows: "A reclamation district, organized and existing under the laws of the State for the purpose of reclaiming certain swamp and overflowed lands situated upon the Sacramento River, has a right to erect and maintain a levee along the bank of the river so as to prevent the inundation of the land sought to be reclaimed, notwithstanding the possible or probable effect of the levee would be to cause the waters of the stream to overflow other lands situated upon the river. Damages so caused by the levee several years after its erection, on land situated upon the opposite bank of the river two miles farther down the stream. are *dammum absque injuria,* for which the reclamation district is not liable. * * * The reclamation district has a right to construct and maintain the levee across the mouth of a slough through which, in times of flood, a part of the waters of the river was accustomed to flow and escape upon the adjoining low lands." *Lamb* v. *Reclamation District,* 73 Cal. 125.

The Supreme Court of Iowa, in the case of *Hoard* v. *Des Moines,* 62 Iowa 326, held that (quoting from the syllabus) "every owner of land has a right to protect himself from overflow in times of flood by water from a river, even though, by excluding the water from his own premises, he deepens it between his land and the river; and, on the same principle, a city may protect its territory from overflow by the construction

of a levee, and, in the absence of negligence, will not be liable to one who owns a lot between the levee and the river." See also *Cairo & V. Rd. Co.* v. *Stevens,* 73 Ind. 278, and other Indiana cases therein cited. 2 Farnham on Waters, § 1340.

We conclude that, upon the state of facts which the jury could have found under the instructions of the court to exist, the defendant could rightfully construct the levee in the manner described without liability to plaintiff for damages. It is insisted, however, that a distinction should be made because of the provision of our Constitution that "private property shall not be taken, appropriated or *damaged* for public use without just compensation therefor." Art. 2, § 22, Constitution of 1874. In reaching the conclusion above announced, we are not unmindful of the Constitutional provision; but where no right has been violated, there is no injury for which the law affords compensation. It is a case of an injury without damages. *Lamb* v. *Reclamation District, supra.*

The judgment of the circuit court is affirmed.