## BOONE v. WILSON.

Opinion delivered October 9, 1916.

1. WATER COURSES—ARTIFICIAL CHANNEL.—A stream of water will remain a natural water course, although it flows through a ditch constituting an artificial channel.

2. WATER COURSES—OBSTRUCTION—OVERFLOW OF ADJACENT LANDS.—An adjacent land owner may recover for damages caused by the overflow of his lands occasioned by the obstruction of a water course on lands of an adjacent owner, and it is immaterial that the plaintiff is not a riparian owner.

3. OBSTRUCTION OF WATER COURSE—SUFFICIENCY OF THE EVIDENCE.—The evidence held insufficient to support the allegations of plaintiff's complaint, that defendant had permitted a water course upon his land to become obstructed causing damage to plaintiff's land by overflow.

Appeal from Washington Chancery. Court; *F. G. Lindsey*, Special Chancellor; affirmed.

*Homer L. Pearson* and *Hill, Fitzhugh & Brizzolara*, for appellants.

1. This is a chancery case and is before this court for a *trial de novo*. 98 Ark. 459; 104 *Id.* 475; 99 *Id.* 128; 4 Crawford 150; 85 Ark. 101; 101 Ark. 493; 73 Ark. 187.

2. A natural water course was diverted. The testimony is clear. 197 Mass. 568; 45 Mich. 335; 11 A. & E. 571; 93 Penn. St. 400; 56 Wisc. 73; 93 Ark. 46; 95 *Id.* 242. Wilson obstructed the branch at the point of drift and may be restrained by injunction. 2 Farnham on Waters, etc., §§ 566 a, b, and c, 567, 586.

3. The established facts are: (1) The creek was a natural water course, in continuous service for over twenty-five years. (2) The drift obstructs the flow of the branch and caused the overflow. (3) There is serious and irreparable injury caused thereby and Wilson is responsible for the injury.

*Tillman & Tillman* and *E. P. Watson*, for appellees.

1. The decision of the Chancellor is not against the preponderance of the evidence and in such cases this court will not reverse. The burden is on appellant to show

this and they have failed. All the evidence is not before this court. 95 Ark. 244. The cases cited for appellant as to a *trial de novo* are not applicable. The decision and decree is correct under the evidence and is in accordance with the law.

2. Under the allegations of the complaint and the legal evidence applicable thereto, plaintiffs have failed to make a case which would warrant a court of equity to grant the relief prayed for and the Chancellor properly so found and held. Neither of the plaintiffs have shown themselves to be riparian owners of land on this water course. 40 Cyc. 559; Washburn on Easements, p. 286, note 2; 22 Pick. 333, 335; 13 A. & E. Enc. Law (2 ed.), p. 687-688; 24 *Id.* (1 ed.), 903. If plaintiffs are injured it is because of the overflow of the stream at certain points on the land of Wilson and they so allege. Their injury is by virtue of surface water and not from obstructing the channel as charged in their complaint. The *allegata* and *probata* do not agree. 40 Cyc. 579.

3. Defendants did not obstruct the channel of this water course and there is no evidence to that effect.

4. The rights of plaintiffs and defendants as to control of surface water are not involved in this suit. The appellants raise a new issue in this court for the first time. The case of *Jackson* v. *Keller*, 95 Ark., relied on by appellants was a suit for obstructing the flow of surface water. Wilson is not charged in the complaint with any such acts and there is no proof that he did or has attempted to do this. The decree is right and should be affirmed.

WOOD, J. The appellants brought this suit against the appellees, alleging, in substance, that on the lands of appellee there was a natural and well established water course which flows from the west and southwest in an easterly direction through the lands of the appellees to White River; that said water course had a deep and well defined channel, sufficient to hold the water and to deliver the same into White River; that the water, in its natural and accustomed course, did not flow upon or across the

land of appellants; that appellees, desiring to divert the flow of water so that it might not run through their own lands, and desiring to divert the course of the water so as to make it flow through, across and upon the lands of the appellants, knowingly and purposely permitted the accumulation of drift, mud, weeds and other matter in such water course and caused such water course to be so dammed for the sole purpose of diverting the flow of water upon the appellants; that if appellees had not permitted this drift to accumulate appellants' lands would have been free from any overflow or damage on account of the water course; but that the presence of the drift had made appellants' lands wet, boggy and unfit for cultivation and forced appellants' lands to grow up in weeds, grass and other wild growth; that the lands of appellee J. B. Wilson are higher than the lands of appellants and is infected with a growth of Johnson grass, which is pernicious and detrimental to farming lands; that appellees, by permitting the water course to become filled and dammed had caused appellants' lands also to become infected with Johnson grass. Appellants alleged that their damage occasioned by the overflow was great and irreparable, and that they had no adequate remedy at law. Appellants prayed that the appellees be enjoined from maintaining, causing or permitting the water course to become filled and dammed upon appellees' premises, and that they be ordered to open the water course and abate the nuisance so that the water would not flow upon, across and over the lands of the appellants. There was also a general prayer for all equitable and proper relief.

The appellees answered admitting that the land of appellee Wilson was higher than the adjacent lands, but denied all material allegations as to the injuries alleged to have been caused by appellees as to the overflow. Appellees alleged that there was a natural water course running across the lands of appellants which discharged its waters into White River. Appellees alleged that some years ago appellee J. B. Wilson and one Ed Boone, who at that time owned the farm now owned by Hugh Boone, one of the appellants, agreed to dig a ditch as an experi-

ment with a view to diverting, if possible, the waters flowing onto and over appellee's farm. Appellees alleged that the land of the appellee J. B. Wilson was upon higher ground than the appellants; that White River flowed near both of these lands in a general direction from south to north; that the water flowing over the lands of appellee J. B. Wilson, flows on his land from the land south and above his lands, and flows naturally from his lands on and across the lands of appellants which are north and below the lands of J. B. Wilson. They further alleged that there was a natural and well established water course running across the land of appellee J. B. Wilson, and that this identical water course continues running on and across the lands of appellants in a natural and well defined channel or water course, and discharges itself into White River; that some years ago, in a spirit of neighborliness J. B. Wilson and one Ed Boone, who at that timed owned the farm now owned by appellant Hugh Boone, agreed to dig a ditch as an experiment with a view of diverting, if possible, the water flowing onto and over J. B. Wilson's farm, thence onto and over the farm north of and below Wilson's; that in pursuance of this agreement they did dig the ditch; that J. B. Wilson incurred all expense incident to the digging and maintenance of the ditch; that, inasmuch as there is a sharp and continuous rise or elevation of three feet from the place where the water complained of naturally flows onto and over the lands of appellants to the place where the appellants seek to compel the appellees to discharge said water into a stream that flows down hill, it has proved impossible to compel this water to flow uphill along the ditch so dug as an experiment, as above mentioned; that appellee J. B. Wilson, at great expense and in good faith, built a dam, and did everything in his power to cause the water complained of to flow along the ditch dug as aforesaid, but that the water had continued to flow in its natural channel and according to the natural configuration of the land.

The chancellor made a general finding that upon the pleadings and the evidence adduced the appellants

were not entitled to the relief prayed and entered a decree dismissing their complaint for want of equity.

We find it impracticable to bring into this opinion the maps and plats that were used by the witnesses of the respective parties while testifying as to the location of the lands and water course and the points where it was alleged that the same was obstructed and diverted by the appellee Wilson, and showing the direction and location of the various branches and ditches referred to by the witnesses in their testimony. We have examined the testimony of each witness in the record, with these plats and maps before us.

It could serve no useful purpose as a precedent to set out and discuss in detail the testimony of these witnesses, nor indeed could it be done intelligently without the use of the maps and plats which the witnesses had before them. We shall, therefore, discuss the testimony only in a general way and state the conclusions of fact which we have drawn from it and announce the principles of law applicable thereto.

A water course is defined by the Supreme Court of Idaho as "A stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes. There must be substantial indications of the existence of a stream, which is ordinarily a moving body of water." *Hutchinson* v. *Watson Slough D. Co.*, 16 Idaho, 484.

In *Sanguinetti* v. *Pock*, 136 Cal. 466-471, it is said: "A water course is defined to be a running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel, having a bed and banks, and usually discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or other extraordinary causes." See 1 Water

Rights Western States, sec. 332 et seq. 336; Angell on Water Courses, sec. 4.

We will designate, for convenience, the lands of the appellees as the Wilson lands and the lands of appellants as the Boone lands.

(1)   Applying the above definition of "water course" to the testimony adduced at the trial, a preponderance of the evidence shows that there was a water course running through the Wilson lands to a certain point, and thence in a southeasterly direction to a certain other point, and thence in a northeasterly direction, where it empties into White River.   The general course of the stream from its source to its confluence with White River was in a northeasterly direction, though at one point on the lands there was a turn from this direction in a southeasterly direction to a certain point, and then another turn in a northeasterly direction.   The water course is designated in the record by the witnesses under the various names of "Price branch," "Lewis ditch," and "Wilson branch," these names representing the names of the persons who successively owned the lands through which the water course runs and in the order of their ownership.

Moses Lewis, a former owner of the Wilson lands, dug a ditch from the point where the channel first turns in a southeasterly direction to the point where it again turns in a northeasterly direction.   But this ditch did not, according to a preponderance of the testimony, change the general direction of the water course.   It was only constructed to straighten out the channel and to facilitate the flow of water.

There is some testimony tending to show that the old or Price branch, from the point where it first entered the Wilson lands, flowed in a general northeasterly direction through the Wilson lands and on through the Boone lands and into White River without making any divergence whatever in its course to a southeasterly direction.   One of the plats introduced in evidence, and some of the testimony, shows this old branch as running in a general northeasterly direction from the place where it first enters the Wilson lands to its confluence with White River,

without making any sharp turn to the southeast. And testimony of some of the witnesses tends to show that Lewis diverted the flow of this old channel by a ditch cut by him so as to make it flow in a southeasterly direction; and, as one of the witnesses states, for the purpose of turning the water off of the Boone lands. But as already stated, a preponderance of the evidence shows that Lewis dug the ditch for the purpose of straightening out the channel, and that the general direction of the stream was not changed. The fact that Lewis dug this ditch for the purpose of straightening out the channel, without changing the natural and general course of the water, and that the water took the course of this ditch instead of being confined in the former banks of the channel did not make it any the less a natural water course. It was still a natural water course though flowing, after the construction of this ditch, in artificial channels. See *St. L. I. M. & Sou. R. Co.* v. *Magness, supra; Stimson* v. *Inhabitants of Brookline,* 197 Mass. 568; *Freeman* v. *Weeks,* 45 Mich. 335. The testimony is undisputed that the water usually flowing through the channel of the old branch or water course had continued for years after the cutting of the Lewis ditch to flow through that ditch, as far as it extended, and then on in its natural and regular course to where it emptied into White River, so that when Wilson purchased the lands of Lewis he acquired them with this water course, a part of which was the Lewis ditch, already established.

(2) The testimony shows that the Boone lands were not adjacent to the water course, being some nine hundred feet distant therefrom. Appellee's counsel contend that inasmuch as the appellants were not riparian owners they could not recover for the obstruction of this water course because the water, after its diversion from the main channel, became surface water. This contention of appellee is unsound. The preponderance of the evidence shows that the obstruction of the water course and the diversion thereby of water from this water course on to the Boone lands had the effect of flooding those lands. In other words, the obstruction of the

stream and the diversion of the water caused the Boone lands to be overflowed in such a manner as to greatly injure the same, to the damage of appellants.

It is wholly immaterial whether the appellants were riparian owners or not. They are entitled to recover any damages they sustained caused directly and proximately by the obstruction and diversion of the water course.

In *St. Louis, I. M. & S. R. Co.* v. *Magness,* 93 Ark. 46-53, we said: "Many cases of this court recognize the doctrine that the waters of a stream in their natural flow cannot be obstructed or diverted so as to damage the lands of another. One who does so is liable for the damage thus wrought. Even if these waters had been nothing more than surface waters, appellant could not gather them into a ditch and cast them upon the lands of appellees."

(3) This principle is applicable to the facts in this record. Appellants would be entitled to any damages that resulted directly and proximately from the act of another in obstructing and diverting the waters of a water course upon their lands in such manner as to greatly damage them.

But, appellee J. B. Wilson insists that they did not obstruct the channel of this water course, as alleged in the complaint. This is purely a question of fact. The burden was upon the appellants, plaintiffs below, to show by a preponderance of the evidence that appellees had "caused the channel of said water course at a certain point upon the land of Wilson to become dammed with drift, mud, trash, weeds, and other matter, and had knowingly and purposely permitted the accumulation of such drift, etc., in the water course for the sole purpose of diverting the same from its natural and established course across and upon the lands of the plaintiffs," as alleged in their complaint.

We will not undertake to set out in detail the evidence adduced on this issue. A careful consideration of it convinces us that appellants have failed to show by a preponderance that the drift, which obstructed the water course and diverted the waters on to the Boone lands, was caused by any act of commission or any failure on the

part of appellee, J. B. Wilson, to discharge any legal duty he owed to appellants. A preponderance of the evidence shows that the drift complained of was produced by the natural flow of the waters of the stream at high tide, which carried down the logs, brush, weeds, cornstalks, etc., and that on account of the rather sharp turn or angle in the stream these were lodged against the banks' and the flow of water was thus gradually obstructed, resulting in the drift and overflow of which appellants complain; that Wilson could not have prevented this obstruction except by an unreasonable consumption of time and expenditure of money which were not required of him.

Appellants are not entitled here under their general prayer to have appellee enjoined from interfering with. them should they desire to go upon the land of Wilson to remove the drift complained of, because no such issue was raised by the pleadings, and the undisputed testimony shows that appellants made no request of the appellees before the institution of the suit to allow them the privilege of going upon the Wilson lands to remove the drift. We therefore do not decide whether or not appellants would have the right, after request or demand upon appellees, to go upon the lands of the latter and remove the obstruction to the water course which is causing damage to their land.

Chancery causes are tried here *de novo*, and upon such a consideration of the entire case we find that the decree is correct, and the same is therefore affirmed.