TURNER v. SMITH.

4-9211                                        231 S. W. 2d 110

Opinion delivered June 12, 1950.

Rehearing denied July 3, 1950.

*Hendrix Rowell,* for appellant.

*A. F. Triplett, Sam M. Levine* and *Reinberger &* *Eilbott,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by fourteen landowners and two tenants to enjoin the appellant, Y. B. Turner, from maintaining a reservoir which is alleged to obstruct the natural drainage of the plaintiffs' lands. The plaintiffs also asked damages for crop destruction that occurred in 1948 as a result of inundation caused by the Turner reservoir. Other landowners intervened to assert similar causes of action. The chancellor, after hearing testimony for eight days and after viewing the area in question, entered judgments totaling $6,773 and issued a mandatory injunction requiring Turner to cut 500-foot openings in the banks of his reservoir at four specified points. Turner appeals, and the appellees cross appeal.

In 1948 Turner constructed, apparently for duckhunting purposes, a rectangular reservoir that is one and three-quarters miles long from north to south and a mile wide. The levee enclosing this reservoir is about three feet high. The principal issue is whether Turner, by putting in this levee, has wrongfully obstructed nat-

ural watercourses or has merely fended off surface waters—as he is entitled to do if he does not unnecessarily damage his neighbors. *Little Rock & F. S. Ry. Co.* v. *Chapman,* 39 Ark. 463, 43 Am. Rep. 280; *Baker* v. *Allen,* 66 Ark. 271, 50 S. W. 511, 74 Am. St. Rep. 93.

This part of Jefferson County slopes gently to the southeast and normally drains in that direction. The slope is so gradual that the fall is only a foot between the west bank of the reservoir and the east bank. In 1948 the appellees owned or occupied lands that lie generally northwest of the reservoir. It is practically undisputed that in November of that year many of the appellees were compelled to abandon their homes because of high water. Several of them testified that for from ten to twenty years they had made crops annually on these farms, but 1948 was the first year in which high water forced them to vacate their homes. Their theory of the case is that the southeastward slope is so nearly horizontal that even a three-foot levee impounds water that extends for miles to the northwest.

After studying the testimony we are convinced that Turner has obstructed at least two natural watercourses. On several occasions we have defined a watercourse. Frequently cited is *Boone* v. *Wilson,* 125 Ark. 364, 188 S. W. 1160, where we said: "A watercourse is defined to be a running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel, having a bed and banks, and usually discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or other extraordinary causes." In *Richardson* v. *State,* 77 Ark. 321, 91 S. W. 758, we defined a bayou as a sluggish watercourse, a small river or creek, an offshoot of a river.

In the light of these definitions it is pretty clearly proved that Turner has obstructed natural streams

rather than mere surface waters. The north levee of his reservoir crosses what was formerly Short Bayou. At its point of entry this bayou had a clearly visible channel that is not only described by witnesses but is also discernible upon aerial photographs of the area. After entering the Turner property this bayou flattened out and became a broad sheet of water in the nearly level timberland, but the evidence indicates that the water continued to flow sluggishly toward the southeast until the stream reappeared with well defined banks at a point east of the reservoir. In much the same way Fish Lake Bayou used to flow across the southern part of the appellant's reservoir. At the west line this bayou had a visible channel, but several hundred feet after entering the Turner property Fish Lake Bayou temporarily "fingered out" and became a marsh or "scatters" before reappearing as a bayou at a point inside the east boundary of the reservoir. The fact that these streams temporarily flattened out and flowed without well defined banks did not destroy their character as watercourses, nor did this fact deprive the appellees of their right to insist that the water's flow be unimpeded. The leading cases on this point recognize that at intervals a stream may spread out and become sluggish without thereby being reduced to surface water. *Gillett* v. *Johnson,* 30 Conn. 180; *Macomber* v. *Godfrey,* 108 Mass. 219, 11 Am. Rep. 349; *Mitchell* v. *Bain,* 142 Ind. 604, 42 N. E. 230.

The appellant insists, however, that unless he can obstruct these bayous his lands are condemned to be forever a broad right-of-way for water draining from the north and west. This fear is not well grounded. All that the upland proprietors may legally demand is that the natural streams be permitted to continue their eastward flow without hindrance. Turner is charged with notice that the land he bought is crossed by living watercourses. He may reclaim his swampland by confining these streams between levees or within ditches, but in doing so he must provide channels that will take care of the bayous' waters in ordinary conditions and in times of any recurrent floods that may be reasonably expected.

Undoubtedly he may maintain a reservoir on his property, but in doing so he cannot flood his upland neighbors by blocking the flow of natural watercourses.

We do not think, however, that the record supports the chancellor's finding that 500-foot openings must be cut at four points in the banks of the reservoir. The evidence indicates that somewhat narrower openings may be sufficient to permit the passage of the water. Without attempting to define the width of the cuts we modify the decree to provide that the appellant must remove his levees for sufficient distances to allow the waters to flow without obstruction in normal conditions and in times of recurrent floods.

Reversible error is assigned in several rulings upon the admission or exclusion of evidence. This is a chancery case, however, which we try *de novo*. It is enough for us to say that, even conceding all the appellant's contentions, the preponderance of the testimony nevertheless supports the decree.

Finally, it is contended that the money judgments are excessive. In several instances this is true, owing to two errors in the chancellor's computation of damages. Most of the judgments are for the value of cotton crops that were inundated before the appellees were able to finish gathering them. A number of the appellees testified that they would have picked the cotton themselves, and in these cases the chancellor charged nothing for the expense of gathering the crop. This was error. The appellees were entitled only to the value of the cotton at the time of its destruction, and not to charge them with the cost of picking it would be to reimburse them for labor that was never performed. We have held that when a matured crop is destroyed the cost of harvesting it should be deducted in arriving at its value. *Moore* v. *Lawson,* 210 Ark. 553, 196 S. W. 2d 908. Second, several of the plaintiffs received judgments for more than the amounts they sued for. In a very similar case of crop damage, where the jury returned a verdict for $1,347.50 even though the complaint alleged only $390 as damages, we held that the amount

stated in the complaint measured the maximum recovery. *Western Union Tel. Co.* v. *Byrd,* 197 Ark. 152, 171, 122 S. W. 2d 569; see also *Cohn* v. *Hoffman,* 45 Ark. 376. These two errors in computation require us to recalculate nearly all the judgments, but we see no reason to burden the reports with figures that are of no conceivable value as a precedent. These matters are set forth in an appendix that will not be published in the official or unofficial reports.

On cross appeal it is urged that the appellees are entitled to double damages under Ark. Stats. 1947, § 35-523. These plaintiffs elected to sue in equity, however, and in the absence of any showing of willful wrongdoing on Turner's part we are not willing to say that he should be subjected to a penalty. See *Cooley* v. *Lovewell,* 95 Ark. 567, 130 S. W. 574; *Hendrix* v. *Black,* 132 Ark. 473, 201 S. W. 283, L. R. A. 1918D, 217.

With the indicated modifications the decree is affirmed.