Gerald BOYD and Patsy BOYD, His Wife *v.*
GREENE COUNTY, Arkansas

CA 82-122                                      644 S.W.2d 615

Court of Appeals of Arkansas
Opinion delivered January 12, 1983

*Cathey, Goodwin, Hamilton & Moore,* by: *Donis B. Hamilton,* for appellants.

*Gibson & Bearden,* for appellee.

Tom Glaze, Judge. This case involves the drainage of surface waters over appellants' property. Appellants own an approximate ten-acre tract of crop land which on the south side is bordered by a county road. Rainwater and drainage from nearby rice fields overflowed the road ditches along the county road and ran diagonally through appellants' field, draining from the southeast corner to the northeast corner. To ward off this drainage, appellants constructed a levee on their property alongside the roadway. Subsequently, the county road flooded. Appellee then filed suit, alleging appellants had blocked a natural watercourse. The trial court agreed with appellee and issued a mandatory injunction compelling appellants to remove their levee. On appeal, appellants' sole argument is the chancellor's finding that a watercourse existed across appellants' land is clearly against the preponderance of the evidence.

As early as 1882, our Supreme Court has recognized the common law "natural flow" rule that "each proprietor upon running water, flowing in a definite channel, so as to constitute a watercourse, has a right to insist that the water shall continue to run as it has been accustomed; and that no one can obstruct or change its course injuriously to him without being liable in damages." *Little Rock and Fort Smith Railway Co.* v. *Chapman,* 39 Ark. 463, 474 (1882). Where no watercourse exists, Arkansas has adopted the common law rule that a landowner is justified in defending against surface runoff without incurring liability for damages unless injury is unnecessarily inflicted upon another which, by reasonable effort and expense, could be avoided. *McCoy* v. *Board of Directors of Plum Bayou Levee District,* 95 Ark. 345, 129 S.W. 1097 (1910); and *Little Rock and Fort Smith Railway Co.* v. *Chapman, supra.* Which of the two, foregoing rules is applicable to the facts at bar depends upon whether a watercourse exists across appellants' land. If one exists, appellants have no right to obstruct the flow of water within the watercourse. However, if no watercourse exists, the appellants' have a right, without incurring liability for damages, to defend themselves against surface water unless they unnecessarily injure or damage another. *See Leader* v. *Mathews,* 192 Ark. 1049, 95 S.W.2d 1138 (1936).

In *Boone* v. *Wilson,* 125 Ark. 364, 188 S.W. 1160 (1916), the Supreme Court defined a watercourse as follows:

[A] running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. *It must flow in a definite channel, having a bed and banks,* and usually discharges itself into some other stream or body of water. *It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or other extraordinary causes.* [Emphasis supplied].

In the instant case, at least two reasons compel our finding that no watercourse runs across appellants' land.

First, it is virtually undisputed that the water involved here is mere surface drainage from neighboring rice fields and/or rainfall. This conclusion is supported not only by appellants' testimonies, but also by that of the appellee's witnesses as well. Appellee argues that the particular source of the water is immaterial, and the fact that water is mere surface drainage does not preclude a finding that a watercourse exists. Appellee cites 93 C.J.S., Waters, § 4 (c) in support of its argument. While some other states may have adopted this proposition urged by appellee, Arkansas has not. To do so now would require this court to modify or reject the Supreme Court's definition of watercourse as set forth in *Boone* v. *Wilson, supra,* which has since been followed in a host of cases. *See, e.q., Solomon* v. *Congleton,* 245 Ark. 487, 432 S.W.2d 865 (1968); *Turner* v. *Smith,* 217 Ark. 441, 231 S.W.2d 110 (1950); *Brasko* v. *Prislovsky,* 207 Ark. 1034, 183 S.W.2d 925 (1944); *Leader* v. *Mathews, supra;* and *Chism* v. *Tipton,* 269 Ark. 907, 601 S.W.2d 254 (Ark. App. 1980). We decline to do so.

Our second reason for finding no watercourse is that the evidence before us reflects that the surface water does not flow in a definite channel, having a bed and banks. In the early case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Ramsey,* 53 Ark. 314, 13 S.W. 931 (1890), the Supreme Court, when discussing navigable streams, adopted the following definition of the bank and bed of a river:

> *The banks of a river are those elevations of land which confine the waters when they rise out of the bed; and the bed is that soil so usually covered by water as to be distinguishable from the bank by the character of the soil, or vegetation, or both, produced by the common presence and action of flowing water.* But neither the line of ordinary high-water mark, nor of ordinary low-water mark, nor of a middle stage of water, can be assumed as the line dividing the bed from the banks. This line is to be found by examining the bed and banks, and ascertaining where the presence and action of water are so common and usual, and so long continued in all ordinary years, as to mark upon the soil of the bed a character distinct from that of the

banks, in respect to vegetation, as well as in respect to the nature of the soil itself. Whether this line between the bed and the banks will be found above or below, or at a middle stage of water, must depend upon the character of the stream. * * * *But in all cases the bed of a river is a natural object, and is to be sought for, not merely by the application of any abstract rules, but as other natural objects are sought for and found, by the distinctive appearances they present; the banks being fast land, on which vegetation, appropriate to such land in the particular locality, grows wherever the bank is not too steep to permit such growth, and the bed being soil of a different character and having no vegetation, or only such as exists when commonly submerged by water. [Emphasis supplies].*

*Id.* at 322-23, 13 S.W. at 933.

We are unaware of any reason why the bank and bed definition in *Ramsey* should not be applicable to watercourses. This definition is certainly consistent with the manner in which the Supreme Court has treated the subject when it has been called upon to decide whether a watercourse existed. For instance, in *Leader* v. *Mathews, supra,* one of the reasons the Court found no watercourse was because some of the land and so-called bed, over which the water flowed, was in cultivation. In the cases of *Stacy* v. *Walker,* 222 Ark. 819, 262 S.W.2d 889 (1953), and *Reddmann* v. *Reddmann,* 221 Ark. 727, 255 S.W.2d 668 (1953), the Court found no watercourse existed because in each case the water drained following the natural contour of the land and left no well-defined channel.

Here, appellee's witnesses testified the surface water drainage followed the contour of the land in the vicinity. One testified that there were hills on each side of appellants' property. Another witness said that the contour of the land was such that a ten-feet high ridge is located on one side of appellants' property, causing surface drainage onto the lower land owned by appellants. Finally, appellants' undisputed testimony showed that the land alleged to be a natural watercourse was row-cropped and cultivated every

year. Our review of the evidence overwhelmingly leads to the conclusion that only surface drainage is involved, that the water flowed naturally onto appellants' land because it was the low ground in the vicinity and that the water never flowed in a definite channel with a bed and banks. Because we find the evidence fails to support the trial court's finding of a watercourse, we reverse.

We must also remand this cause for further proceedings because on the record before us, we are unable to determine whether appellants unnecessarily inflicted damages on others while justifiably preventing surface water from draining onto their land. Because the trial court erroneously found a watercourse existed, it simply did not address this second issue nor did the parties fully develop the evidence on the issue. For instance, there is no evidence regarding who discharged the rice field water which flowed onto the appellants' property or whether such discharge was reasonable or tortious. Further, the evidence was incomplete concerning what alternatives were available to the appellants and others in dealing with the water problem. We therefore reverse and remand this case for further development and proceedings consistent with this opinion. *See Moore* v. *City of Blytheville,* 1 Ark. App. 35, 612 S.W.2d 327 (1981).

Reversed and remanded.