TAYLOR v. RUDY.

Opinion delivered May 8, 1911.

1. BOUNDARY—PAROL AGREEMENT.—Where there is uncertainty as to the boundary or the owners of adjoining lands are in dispute as to the dividing line, the parol agreement of such owners as to the boundary establishes the line, and, when followed by possession with reference thereto, is conclusive on them.   (Page 132.)

2. WATERS—RESTRAINING MAINTENANCE OF DAM.—Equity will grant relief in the case of the raising of the water in a watercourse by means of a dam to the injury of upper riparian lands, where the injury is substantial and permanent, even though the rights have not been established at law.   (Page 132.)

3. SAME—RIGHT TO USE.—Every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water, and to have it flow in its natural and accustomed course without obstruction, diversion or corruption.   (Page 132.)

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—A chancellor's findings of fact, not against the preponderance of the evidence, will be sustained on appeal.   (Page 133.)

5. WATERS—PERMANENT INJUNCTION.—The defendant cannot complain because the chancellor permanently enjoined him from maintaining certain dams, though he testified that he tore down the dams before the decree was rendered, if he did not testify that he did not intend to rebuild them.   (Page 133.)

Appeal from Lawrence Chancery Court, Western District; *George T. Humphries,* Chancellor; affirmed.

*J. B. Judkins* and *David L. King,* for appellant.

Injunction against a party creating or maintaining a nuisance is not a matter of absolute right, but lies within the sound discretion of the court, having due regard for not only the strict rights of the plaintiff and defendant but also the surrounding circumstances. Wood on Nuisance (3 ed.) 1182; 20 Am. St. Rep. 124; 29 *Id.* 132. Wrongs already committed cannot be corrected by injunction. 42 Kan. 368. See also 8 Am. & Eng. Enc. of L. 700; *Id.* 722.

In this case a court of equity was without jurisdiction. It will not, except in extreme cases, exercise the power to remove or compel the removal of existing structures upon land, even though they may constitute a nuisance, but will leave the plaintiff to his remedy at law. 120 Me. 492; 97 Ala. 69; 113 Ia. 501; 12

Current Law 177; *Id.* 178; 161 Mich. 205; 14 Det. Leg. N. 898; 220 Pa. 326; *Id.* 690; *Id.* 861; 34 N. J. Eq. 469; 135 Ind. 547; 73 Ind. 284; 23 Mich. 448; 5 Miss. 116; 118 Am. St. Rep. 881; 31 Am. Dec. 712; 75 *Id.* 430; 107 Ind. 188; 23 Ind. App. 573; 111 Tenn. 121; 88 Tenn. 415; Sedgwick on Damages (8 ed.) § 91; 107 Am. St. Rep. 209. The burden was on the plaintiff, when he alleged that he owned the land on which the machinery was located, to prove that allegation with the same degree of certainty as would be necessary to support a suit in ejectment. 73 Ark. 201; 69 Ark. 263.

The testimony is clear that plaintiff recognized the rights and ownership of defendant in the land on which the sawmill was being operated, and that plaintiff's only right therein was permissive. Such a right can never ripen into title. 42 Ark. 118.

The dedication of streets·and alleys to public use by platting and filing the town plat and the sale of lots with reference to such plat is irrevocable. 77 Ark. 221.

*A. S. Irby*, for appellee.

1. The dams being a public nuisance, appellee had the right, because of having suffered special damage, to invoke the aid of the chancery court to abate such nuisance by injunction. 33 Ark. 636, 637; 40 Ark. 87; 35 Ark. 499; 66 Ark. 42; 39 Ark. 403.

2. A boundary between lands belonging to adjacent owners may be established by their agreement irrespective of the location of survey or plat lines. 23 Ark. 408; 75 Ark. 405; *Id.* 395.

HART, J. This suit was instituted in the chancery court by D. B. Rudy against A. D. Taylor to restrain the defendant from obstructing a stream of water which ran through the plaintiff's land.

A nonnavigable stream, called Machine Creek, runs through the village of Smithville in Lawrence County, Arkansas. Smithville is unincorporated, and has about 200 inhabitants. D. B. Rudy claims to own certain lots on the bank of said creek in said town, and erected thereon a sawmill and gin. A. D. Taylor owned the lots adjacent to and just below the mill site on the creek. He constructed two dams across the creek on his land. The first dam was about 100 feet below the mill and gin site, and the second was still lower down.

These facts are alleged in the complaint, and the plaintiff further alleges that the dams in times of ordinary overflows of the creek caused the waters thereof to back up and overflow the land of the plaintiff and enter into the buildings, containing his saw mill and gin machinery, thereby preventing the use of same and permanently damaging said machinery. The prayer is that the defendant be restrained from maintaining said dams.

The defendant denied the allegations of the complaint.

The chancellor granted a temporary injunction, which on the final hearing of the cause was made permanent, and the defendant has duly prosecuted an appeal to this court.

The testimony in the case is quite voluminous, and we shall only state or refer to such portions of it as we deem material to the issues raised by the pleadings, and which we think is essential to a proper decision of the case.

It is contended by counsel for appellant that the buildings and machinery which it is claimed were injured were not upon the lots of the plaintiff. As above stated, the village of Smithville has never been incorporated, and has about 200 inhabitants. The original plat of the village was filed in the clerk's office, and a copy of it is in the record. According to this plat, there are seven blocks from north to south and six blocks from east to west, and streets 50 feet wide are shown between the blocks. The county surveyor of Lawrence County testifies that the plat is so incomplete that it is difficult for a surveyor to locate the lots platted; that there is a discrepancy between the plat and the lots as they are actually located. The county surveyor made a survey of the lands in controversy, and prepared a map showing their location with reference to the blocks shown by the original plat and with Machine Creek. He took the public square as his point of beginning. Machine Creek runs north and south at the place where plaintiff's buildings, machinery and mill yards are situated. They are situated on the west bank of the creek and on what are known as fractional blocks 12 and 41. These fractional blocks are adjacent to and east of blocks 12 and 41 as shown by the original plat—block 12 and fractional block 12 being immediately north of block 41 and fractional block 41. The plaintiff owns block 12 and fractional block 12, and the defendant owns block 41 and fractional block 41. Both deraign title from a common source.

According to the plat of the county surveyor the out buildings of plaintiff's mill are directly east of the southern part of block 12, his main mill buildings are situated on what would be a street if one had been extended eastward to the creek between fractional blocks 12 and 41; his sheds are south of the main building and due east of the northern part of block 41.

It is the contention of defendant that the main mill buildings are situated on a street, and that the sheds and mill yards south of that are on his lots. The lots all originally belonged to W. C. Sloan. On the 25th day of December, 1888, Sloan conveyed to J. B. Turnbow block 12, as described on the original plat, and fractional block 12, being described as all the space lying due east of said block 12 proper. On the 18th day of April, 1905, Turnbow conveyed to the plaintiff by the same description. L. T. Andrews married the daughter of W. C. Sloan, and at her father's death she inherited blocks 41 and fractional block 41. On the 9th day of July, 1906, she conveyed them to the defendant.

Turnbow testifies that no street was ever opened between blocks 12 and 41, and none between the fractional blocks 12 and 41; that when he purchased from Sloan in 1888 there was a rail fence between blocks 12 and 41, and, there being uncertainty as to where the boundary line between the property was located, it was agreed between him and Sloan that this fence should be the boundary line between blocks 12 and 41. There being no division fence between fractional blocks 12 and 41, it was agreed that a line extending east to Machine Creek in the same general direction as the fence between blocks 12 and 41 should be the boundary between these fractional blocks. His testimony about the agreement as to the boundary line was corroborated by Mathews, who states that the rail fence was afterwards replaced by a wire one. The possession of the parties was with reference to the fence as the dividing line. An extension of the fence between blocks 12 and 41 eastward to Machine Creek would run immediately south of the buildings designated as sheds on the plat exhibited with the deposition of the county surveyor. Considering all the testimony in the case together, however, we are of the opinion that the boundary line between fractional blocks 12 and 41 was regarded by both plaintiff and defendant as being immediately south of plaintiff's main mill buildings, and would be a

line running due east to the creek. We are confirmed in this belief from the fact that plaintiff asked and received permission from the defendant to use the land south of his main buildings, thus recognizing that it belonged to defendant. The testimony shows clearly that no street was ever opened between blocks 12 and 41 and fractional blocks 12 and 41. It is also evident that it was difficult to ascertain the boundary line between these blocks, and there was uncertainty as to the location of the true line. After the parol agreement as to its location was made, each party held possession with reference to the line so established. Where there is uncertainty as to the boundary or the owners of adjoining lands are in dispute as to the dividing line, the parol agreement of such owners as to the boundary establishes the line, and, when followed by possession with reference thereto, is conclusive on them. *Payne* v. *McBride, 96* Ark. 168. The parties to the agreement continued in possession of the lots with reference to. this agreement until the conveyances to plaintiff and defendant. We hold that under the evidence as disclosed by the record in this case, the boundary line between fractional blocks 12 and 41 runs due east and west and is immediately south of the main buildings of the plaintiff. It follows that he is the owner of the land on which is situated the main building and machinery and is entitled to bring this suit.

It is next contended by counsel for defendant that a court of equity has no jurisdiction.

"Every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water, and to have the same flow in its natural and accustomed course without obstruction, diversion or corruption. * * * The court of chancery has a concurrent jurisdiction with courts of law, by injunction, equally clear and well established, in cases of private nuisance. And it is a familiar exercise of the power of the court to prevent by injunction injury to watercourses by obstruction or diversion." *Holsman* v. *Boiling Spring Bleaching Co.,* 14 N. J. Eq. 335.

"Equity will grant relief in the case of the raising of the water in a watercourse by means of a dam to the injury of upper riparian lands, where the injury is substantial and permanent, even though the rights have not been established at law." *Cloyes* v. *Middlebury Electric Co.,* 80 Vt. 109, 66 Atl. 1039, 11 L. R. A.

(N. S.) 693.  The reason is that where the defendant maintains
a dam and continues to flow the land of plaintiff, asserting his
right to do so, he is in the situation of a party maintaining a
nuisance.  This principle is announced and recognized in the
text works on the subject.  1 High on Injunctions (4 ed.) § 794
*et seq.;* 2 Farnham on Waters & Watercourses, § § 582, 522a.
See also *Wellborn* v. *Davies,* 40 Ark. 83.  The depositions on
this branch of the case are long, and we do not deem it neces-
sary to set out the testimony.  It is sufficient to say that the tes-
timony on the part of the plaintiff shows that, before the dams
were constructed, the waters of the creek did not rise in his mill
and gin buildings in times of ordinary overflow, and that, after
the dams were built across the creek, after ordinary freshets the
waters of the creek would rise up in his mill buildings and rusted
his machinery, and caused the operation of his mill and gin to
be stopped until the waters subsided, and the damage occasioned
thereby could be repaired.  His evidence also shows that the
water standing there caused the buildings to settle and put the
machinery out of plumb.  This recurred after every ordinary
overflow, and was a continuing and permanent injury.  While
this testimony was flatly contradicted by that of the defendant,
the chancellor found in favor of the plaintiff, and his finding, not
being against the preponderance of the evidence, must be sus-
tained on appeal.

Lastly, it is contended by defendant that he tore down the
dam, and that it is not now an obstruction to the flow of the
creek.  Of course, a court of equity should not grant an injunc-
tion if the obstruction has been removed, and if there is no like-
lihood of its being replaced.  In this case, however, the tempor-
ary injunction was issued before the dam was torn away.  More-
over, the testimony does not show that the dams were entirely
removed, and that the defendant did not intend to replace them.
If he had entirely removed the dams, and had shown the court
that he did not intend to rebuild them, doubtless the chancellor
would not have granted a permanent injunction.  In any view,
if he did not intend to replace the dams, the permanent injunc-
tion can do him no harm except as to the matter of costs.  Not
having attempted to convince the chancellor that he did not intend
to replace the dam, he is in no attitude to complain that the

injunction was made permanent or that the costs were adjudged against him.

The decree will be affirmed.