MONTEITH *v.* HONEY.

Opinion delivered September 30, 1918.

1. WATERS AND WATERCOURSES—OBSTRUCTION OF FLOW OF NATURAL STREAM.—At common law the waters of a natural stream or watercourse may not be so obstructed by a lower proprietor as to flow back to the detriment of those above him.

2. SAME—CONSTRUCTION OF DITCH—ABANDONMENT OF OLD CHANNEL.— The fact that a drainage ditch has been constructed to straighten the channel of a creek does not justify the inference that the old bed of the creek was abandoned where its situation and relation to the drainage ditch show that it was intended that it should be a lateral of the drainage ditch and continue to be a natural watercourse.

3. SAME—DITCH AS PART OF WATERCOURSE.—Where a ditch or cut-off is by consent of the landowners affected dug to shorten the channel of a natural watercourse, such ditch becomes a part of such watercourse.

4. SAME—EFFECT OF AGREEMENT TO DIG DITCH.—Where the adjacent proprietors, by agreement, construct a ditch in order to straighten the flow of a natural watercourse, such agreement, when executed, is binding upon the parties and their privies, and the ditch cannot be subsequently closed.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

This is a suit in equity by J. C. Honey against John Monteith to enjoin the latter from maintaining an embankment across a watercourse and causing the water usually flowing therein to set back upon plaintiff's land and overflow it. The watercourse in question is called Johnson Creek. It is a very crooked stream and flows generally in a southeasterly direction. Before entering the plaintiff's land, Johnson Creek flows in a southerly direction and then turns and flows eastward. It flows in an easterly direction through the plaintiff's land and on the eastern boundary line thereof, it flows northward for a short distance on the plaintiff's land and then enters the land of the defendant and flows in an easterly direction for a while and then commences to flow south. About ten years before the institution of the present action, the owners of the land in that neighborhood, whose lands

drained into Johnson Creek, by common consent, made up a sum of money to be used in straightening the channel of the creek. They commenced to straighten the creek on the boundary line between the lands of the plaintiff and the defendant and by the use of scrapers constructed a ditch 383 feet long to a point where it would again intersect Johnson Creek. Subsequently Johnson Creek Drainage District was established, and a ditch was constructed whose general course was in a southeasterly direction. Johnson Creek is crossed several times by this drainage ditch. The defendant constructed an embankment on the western boundary line of his land so that the water could not flow through the ditch or cut-off which had been constructed as above stated.

It is the contention of the defendant that the cut-off or scraper ditch which was constructed by the land owners by common consent, was not a part of Johnson Creek after the construction of the drainage ditch. He contends that the natural drainage to the drainage ditch was through the old bed of Johnson Creek as it existed before the cut-off or scraper ditch was constructed. The old bed of Johnson Creek turned northward at the boundary line between the land of the plaintiff and defendant and runs north for 253 feet. It then turns eastward through the land of the defendant, and at a point 188 feet distant intersects the drainage ditch. Evidence was adduced by him to show that this was the most practical route and the natural drainage for the land of the plaintiff.

On the other hand, it was shown by the witnesses for the plaintiff that the cut-off or scraper ditch was only 383 feet long, and that it, on account of being much straighter, carried the water from plaintiff's land to the drainage ditch in a much quicker space of time and afforded better drainage for both the plaintiff and the defendant. In the spring of 1917 there was an excessive rainfall which caused the water to set back and overflow the lands of the plaintiff. The plaintiff then tore away the dam which the defendant had constructed, so that the waters of Johnson Creek would flow through the cut-off or

scraper ditch into the ditch dug by the improvement district.

The court entered a decree perpetually enjoining the defendant from again constructing and maintaining the dam, or from in any manner obstructing said cut-off or scraper ditch so that the water from Johnson Creek might not flow through it in its accustomed way.

The defendant has appealed.

*W. S. Luna* and *Jeff Bratton,* for appellant.

1. When the drainage district was created and the ditch cut, then the old channel was no longer the channel of Johnson Creek. 3 Farnham on Waters, etc., p. 2618, § 891.

2. Johnson Creek ceased to be a natural watercourse when the cut-off or scraper ditch was constructed.

3. The law governing the use and control of surface water is settled in this State. 39 Ark. 463; 30 A. & E. Enc. Law (2 ed.), 334; 6 Lawson Rights, Redemies & Practice, 4801, § 2944; 66 Ark. 276; 95 *Id.* 349. The damages here were caused by an unprecedented flood or rainfall, and there was no negligence of appellant contributing to the overflow. 13 A. & E. Enc. Law, p. 700; Farnham on Waters, etc., vol. 2, pp. 1839 to 1842; Lawson, Rights, Rem. & Pr., vol. 6, § 2919.

4. Appellant had the right to build the dam to protect his land from surface water and overflow, provided it did not unnecessarily cause Johnson Creek to overflow appellee's land. 95 Ark. 245; 93 *Id.* 46; 95 *Id.* 345. The evidence here shows clearly that the water on appellee's land was surface water and overflow water.

5. The scraper ditch gave appellee no right of easement or servitude to discharge water flowing over his land onto appellant's land. This ditch was abandoned and all rights waived. 29 A. & E. Enc. Law (2 ed.), p. 1107V.

6. No property right was acquired by appellee to the scraper ditch. It was a mere license and revoked. 30 A. & E. Enc. Law (2 ed.), 345; 7 *Id.* 114-5; 90 Ark.

504; 83 *Id.* 149; Tiedeman on Real Prop., § 616. This ditch was an artificial channel and necessary for the protection of appellant's land.

7. The old Johnson Creek channel furnishes a sufficient outlet for all suface and overflow water. The chancellor granted relief in excess of the issues raised and this court has no jurisdiction to grant such.

*Huddleston, Fuhr & Futrell,* for appellee.

1. Johnson Creek was a natural watercourse, and the drainage district did not abrogate appellee's easement and rights. There was no abandonment by appellee of any rights.

2. The doctrine of surface water does not apply here. This case is ruled by 19 Ark. 23. See also 18 Am. St. 387; 8 *Id.* 797; 48 Cyc. 58 *et seq.* The court applied the principles announced in 19 Ark. 23 and granted no more relief than necessary to protect appellee.

HART, J., (after stating the facts). It is a well settled rule of the common law that the waters of a natural stream or watercourse may not be so obstructed by a lower proprietor as to flow back to the detriment of those above him. In *Taylor* v. *Rudy,* 99 Ark. 128, we recognized this rule of the common law, and held that every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water and to have it flow in its natural and accustomed course without obstruction, diversion, or corruption. It was also held in that case that equity would grant relief in the case of the raising of the water in a watercourse by means of a dam to the injury of upper riparian lands, where the injury is substantial and permanent, even though the rights have not been established at law.

It is first contended by counsel for the defendant however, that Johnson Creek ceased to be a natural watercourse when the drainage district was established and constructed. There is nothing in the record, however, which shows that there was any intention that Johnson Creek should be abandoned as a watercourse by

the construction of the drainage district. On the other hand its situation and relation to the drainage ditch show that it was intended that it should be used as a part of the laterals of the drainage ditch and should continue to be a natural watercourse.

Again, it is contended by counsel for the defendant that Johnson Creek ceased to be a natural watercourse on the defendant's land when the cut-off or scraper ditch was constructed. The record shows that Johnson Creek was a very crooked stream and drained about 800 acres of land in this neighborhood. The land owners whose lands were drained by Johnson Creek raised a fund by subscription for the purpose of straightening the creek on the defendant's land, and by common consent the money raised for that purpose was applied in constructing what the parties called the cut-off or scraper ditch. This was done about ten years before the institution of this suit, and was used by the parties as a part of the channel of Johnson Creek for several years. The cut-off in question was dug at the joint expense of the owners of the land, and by common consent was used as a part of the channel of Johnson Creek and remained open as a watercourse for several years thereafter. It has been held in such cases that the same rule governs that applies in the cases of other watercourses. *Freeman* v. *Weeks* (Mich.), 7 N. W. 904; *Meir* v. *Kroft* (Iowa), 80 N. W. 521; *Brown* v. *Honeyfield* (Iowa), 116 N. W. 731, and *Rait* v. *Furrow* (Kan.), 10 A. &. E. Ann. Cas. 1044.

Johnson Creek had a well defined channel with bed and banks in which there was running water. The testimony on both sides shows that Johnson Creek was a natural watercourse before the cut-off or scraper ditch was constructed.

In the application of the principles above announced we think that the cut-off became a part of Johnson Creek and was therefore a part of the natural watercourse. It is true the plaintiff and defendant were not owners of the land at the time the cut-off was constructed, but they are bound by the agreement of their predecessors in title.

The principle of law above announced was recognized and applied by this court in the case of *Wynn* v. *Garland*, 19 Ark. 23. There parties in possession of contigous unsurveyed public lands entered into an agreement to dig certain ditches for the purpose of draining their lands. The ditches were dug according to their agreement and a main ditch was constructed to be the boundary line between them. Afterwards the land was surveyed by the government, and the lines of the public survey differed from those agreed upon. One of the parties entered the lands and, disregarding the boundaries agreed upon, closed the ditch and threw up embankments so as to obstruct the water and back it upon the land of the other party. It was held that the agreement between the parties to construct the ditch was in the nature of a license which, having been accepted and acted upon, could not be disregarded. It was further held that, though the agreement was for an interest or privilege in land and rested in parol, the performance on the part of the plaintiff constituted it an executed contract, and that the defendant had no right to close the ditch.

Therefore, the decree will be affirmed.