WALT *v.* PHILLIPS.

Opinion delivered November 10, 1924.

1. EVIDENCE—WEIGHT DETERMINED HOW.—The preponderance of evidence is not to be determined by numbers or color or character of the witness, but all elements are to be considered in connection with the subject-matter of the testimony of each witness, such as his intelligence, character, interest and relationship to the parties, and his means of information.

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— Where the evidence is evenly poised, so that the Supreme Court is unable to determine in whose favor the preponderance lies, the findings of fact by the chancellor are persuasive, and will not be disturbed.

3. WATERS AND WATERCOURSES—CONSTRUCTION OF LEVEE.—In a suit by a landowner to restrain an adjoining landowner from constructing a levee across a bayou carrying water from plaintiff's to defendant's land, evidence *held* to warrant a finding that such bayou is a natural "watercourse" within the accepted definition of such term, and that the levee would prevent the flow of water through the bayou and cause it to back up and overflow plaintiff's land to his substantial and permanent injury.

4. WATER AND WATERCOURSES—OBSTRUCTION OF FLOW—INJUNCTION.—Equity will grant relief where raising of the water in a watercourse will cause substantial and permanent injury to upper riparian lands, even though the rights have not been established at law.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Coleman & Gantt,* for appellants.

The court erred in making the temporary injunction perpetual. A channel which carries no water except the overflow of rain in times of flood is not a watercourse. 14 Pac. 625; 66 Ark. 271. Surface waters are a common enemy, which any landowner may defend against without incurring liability or damages, unless injury is unnecessarily inflicted upon any one, which, by reasonable effort and expense, could be avoided. 95 Ark. 345; 157 Ark. 618. In the draining of one's land of surface water it is not permissible to direct the flow of water upon the adjoining land, or to increase the volume of the flow by the construction of a drain or ditch. 95 Ark. 242.

*W. D. Jones* and *S. J. Hunt,* for appellee.

The injunction was properly granted. 40 Ark. 83; 99 Ark. 132; 1 High on Injunctions (4th ed.) § 794 *et seq.;* Farnham on Waters and Watercourses, §§ 582 and 522. The waters of a stream in their natural flow cannot be obstructed or diverted so as to damage the land of another. One who does so is liable for the damages thus wrought. 57 Ark. 512; 57 Ark. 387; 78 Ark. 589; 87 Ark. 875; 89 Ark. 556.

WOOD, J. J. P. and J. R. Walt, hereafter called appellants, and L. L. Phillips, hereafter called appellee, are adjoining landowners in Jefferson County, Arkansas. The lands of appellants in sections six and seven are divided from the lands of the appellee in section one by a public road running north and south along the range line between their plantations. Appellants' lands lie east of the road, in range 7, and appellee's land lie west of the road, in range 8. The public road has been gradually built up for a period of some fifteen years until it is higher than the lands on either side.

This action was instituted by the appellee against the appellants in the chancery court of Jefferson County. The appellee alleged that there is a bayou, known as Brown's Bayou, which has its source on the Brown place, near the town of Altheimer, and from thence flows, in the natural course of drainage, through other plantations and through the plantation of the appellee, and across the public road dividing the plantation of the appellee from that of the appellants, and on, through appellants' plantation, into what is known as Five Forks Bayou; that, if unobstructed, the bayou does not affect or damage the appellee's lands. It is alleged that the appellants, without regard to the appellee's rights, were constructing a large levee across Brown's Bayou, at the point where the same enters appellants' land, for the sole purpose of preventing the water which flows through Brown's Bayou from passing through the regular and natural drainage channel; that, if the levee were permitted to be constructed, it would prevent the flow of

water through Brown's Bayou and cause it to back up on the lands of the appellee, to his great damage. The appellee prayed that the appellants be restrained from constructing such levee.

The appellants answered and denied all the allegations of the complaint, and alleged that the levee they were then constructing is a small levee, about 1,400 feet long, on their own lands in section 6, township 5 south, range 7 west, for the purpose of preventing surface waters from flowing across their lands in time of freshet and large rainfalls; that the dividing line between the lands of the appellants and appellee is a public road running north and south, along the side of which, and parallel with the road on the west side thereof, is a canal or ditch twenty feet wide, constructed by the Jefferson County Drainage District No. 2 for the purpose of carrying any water out of Brown's Bayou and any surface water flowing into such canal into Wabbaseka Bayou; that the appellants are taxpayers of the drainage district, and are taxed solely upon the theory of betterment to their lands in having the water diverted therefrom by the drainage district; that there has never been any culvert across the public road for the purpose of enabling the waters on the west side of the road to cross to the east side, and that it is only in times of unusual freshet that the surface waters from appellee's plantation overflow said canal and public road so as to put a part of same upon the lands of appellants; that such waters are strictly surface waters, and do not constitute the waters flowing through Brown's Bayou in a natural stream; that the location of appellants' levee is in a high state of cultivation, and has been for more than seventeen years; that the levee was then being constructed across cotton rows; that there has never been a natural stream running across appellants' lands at any point along said levee. Appellants prayed that appellee's complaint be dismissed for want of equity.

The cause was heard upon the testimony, by depositions, and also oral testimony before the court, and upon

maps and photographs of the *locus in quo*. The trial court found that Brown's Bayou is a natural course, through which the water coming into it at its source now flows and has flowed in the same channel for many years; that Brown's Bayou begins about the Brown place, in Jefferson County, and flows in a southeasterly direction through other plantations and through the plantation of the appellee, and on in a southeasterly direction through the plantation of the appellants, and continues its flow in a southeasterly direction, after leaving the plantation of appellants, through other plantations and farms, finally emptying into Five Forks Bayou and Fish Lake; that Brown's Bayou ran across the public road at a certain point between the plantation of appellee and appellants, and continued from that point through the lands of appellants; that the effect of the construction of the levee contemplated by the appellants would be to prevent the flow of water through the channel of Brown's Bayou and to back the same over a large portion of the land of the appellee, so that no crops could be raised thereon in any years of ordinary rainfall, to appellee's great damage and irreparable injury. Upon these findings the court entered a decree directing appellants to remove such part of the levee as had already been constructed and restraining them from the further construction thereof. From that decree is this appeal.

1. The issue presented by the pleadings is whether Brown's Bayou is a natural stream or watercourse which ran through the lands of the appellee and across the public road, on to the lands of the appellants, at a point where the latter are constructing a levee, and whether this levee, when constructed as contemplated by the appellants, will so obstruct the natural watercourse or stream as to injure and damage the lands of the appellee. The appellants contend that the photographs showing the premises at the point in controversy demonstrate that no bayou runs through at the point where the appellants are constructing their levee, and that the testimony of the engineer, Bennett, in connection with the drawing

prepared by him and attached to his deposition, also demonstrates that Brown's Bayou does not flow across the public road on to appellants' land at the point where the appellants are constructing their levee, and that this fact is also shown by the testimony of nineteen other witnesses. These witnesses appellants name, and say they are white men, and, because of their high standing and personal familiarity and knowledge of the matters involved, are peculiarly qualified to testify, and that their testimony establishes the fact that Brown's Bayou does not cross the road where appellants are building their levee.

On the other hand, the appellee contends that the facts testified to by appellants' witnesses are controverted and rebutted by Engineer W. J. Parkes and twenty-one witnesses on behalf of the appellee, who were also white persons, and, by reason of their familiarity and knowledge of the premises, are equally reputable as the witnesses for the appellants and as worthy of belief; that the testimony of these witnesses shows that they were better acquainted with the country through which Brown's Bayou flows, and with the course of the bayou, than were the white witnesses for the appellants, and that, in addition to these, the appellee has adduced the testimony of nine negro witnesses, all of whom were worthy of belief, and, on account of their familiarity with the matters in controversy, were in a position to know as much, if not more, than the majority of the witnesses who testified for the appellants.

This is an immense record of nearly seven hundred pages. We have carefully examined and weighed the testimony, including photographs and maps, with a view of determining, if possible, where the preponderance lies as to the essential facts in controversy. While numbers are to be considered, the preponderance is not to be determined alone by numbers, neither can it be determined by the color or character of the witnesses; but all elements are to be considered in connection with the subject-matter of the testimony of each witness, such

as the intelligence of the witness, or lack of intelligence, his character, his interest, and relationship to the parties, his means of information, and his opportunity for know-ing the facts to which he testified. It is wholly imprac-tical to set out and discuss in detail the testimony of the witnesses. After duly considering and weighing all these elements, it occurs to us that the facts of this record present a typical case for the application of the doctrine announced in the case of *Leach* v. *Smith,* 130 Ark. 465-470, and other cases, to-wit: ''Where the evi-dence is evenly poised, or so nearly so that we are unable to determine in whose favor the preponderance lies, then the findings of fact by the chancellor are per-suasive.'' In all such cases the findings of fact by the chancellor will not be disturbed, but his findings will be adopted by this court.

2. The trial court found that Brown's Bayou is a natural watercourse, and that the levee which appellants were building, if completed, would prevent the flow of water through the channel of Brown's Bayou and over-flow the appellee's land, to his damage and irreparable injury. The issue was a mixed one of law and fact.

''A watercourse is defined to be a running stream of water, a natural stream, including rivers, creeks, runs and rivulets. There must be a stream usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel and have a bed and banks, and usually discharge itself into some other stream or body of water. It must be something more than mere sur-face drainage over the entire face of the tract of land occasioned by unusual freshet or other extraordinary causes.'' *Boone* v. *Wilson,* 125 Ark. 364. The finding that Brown's Bayou was a watercourse was warranted. under the evidence, and was in accord with the above definition. The law is well settled that ''equity will grant relief in the case of the raising of water in a water-course by means of a dam, to the injury of upper riparian lands, where the injury is substantial and permanent,

even though the rights have not been established at law. The reason is that, where the defendant maintains a dam and continues to flow the land of plaintiff, asserting his right to do so, he is in the situation of a party maintaining a nuisance." *Taylor* v. *Rudy*, 99 Ark. 128, and authorities there cited.

The decree is correct, and it is therefore affirmed.

HART, J., (dissenting). My dissent in this case is principally based upon a question which was not considered in the majority opinion. Therefore, in order that my position may be understood, it becomes necessary for me to write a dissenting opinion.

It seems to me that the construction of the lateral ditch between the farms of Phillips and Walt by the drainage district for the purpose of better taking care of the drainage on the two places precludes Phillips from maintaining the suit in question. This, we think, results from the undisputed evidence which I shall proceed to discuss, after laying down the principles of law which I think should govern.

It is well settled that the Legislature has the power to create drainage districts for the purpose of reclaiming or improving swamp and overflowed lands by ditches and drains and levees. Such districts may be invested with all the necessary authority to construct and maintain whatever main ditches or laterals may be necessary to accomplish such object and to raise money to pay for the same by assessments on the lands to be benefited thereby.

More than ten years ago a drainage district was organized for the purpose of reclaiming and improving the lands within its boundary. Both the Walt and the Phillips farms were included in the district. After the main ditch or canal was dug, it was thought that part of the lands could be drained better by constructing a lateral ditch between the farms of Walt and Phillips. There was a public road between the two farms. The farm of Walt was on the east side and that of Phillips was on the west side of this public road.

According to the testimony of one of the commissioners of the drainage district, all of the dirt taken out of the lateral ditch was piled on the east side, because of the drainage of the lands lying on the west side of the lateral. The public road was thus built up about a foot higher than it was before the lateral ditch was constructed.

J. P. Walt was also one of the commissioners of the drainage district. According to his testimony, before the main canal running east to Wabbaseka Bayou, on the north side of his farm, was finished, they dug a lateral between the Phillips and Walt farms three-quarters of a mile long. The lateral connected at its north end with the main canal. The lateral was sixteen feet at the top, twelve feet wide at the bottom, and five feet deep. The whole country around there drained southeast.

According to the testimony of Clayton P. Gould, an engineer, the main canal of the drainage district runs along the north boundary line of the Walt lands and empties into the Wabbaseka Bayou. It is a large canal, twenty feet wide at the bottom, and has plenty of fall. The lateral between the Walt and Phillips lands lies between the public road and the Phillips land and connects with the main canal on the north.

Frank W. Berry, a farmer, who has also studied civil engineering, was a witness for appellee. He made an examination of the conditions at the request of the appellee. The public road between the Walt and Phillips farms is eighteen inches higher than the lands adjacent to the road on the Phillips farm. There was a ditch fifteen or twenty feet wide running north on the west side of the road. Brown's Bayou goes into this canal, on the land of Phillips.

J. H. Bryson was another witness for appellee. According to his testimony, before the lateral was constructed there was a bridge across the public road, ten or fifteen feet wide, and Brown's Bayou flowed between the opening from the land of Phillips on the west side of the road to that of Walt on the east side thereof.

There was no flow of water in Brown's Bayou, except in the rainy season, but it flowed in the same channel.

J. W. Bellamy, another witness for appellee, testified that the bridge was torn up when the lateral was dug, and that the road has been filled since that time.

W. J. Clary, another witness for appellee, testified that Brown's Bayou plays out, so far as having any bank, somewhere on the Phillips place. From there on the water simply follows the low places in the surface of the land. A good deal of water from Brown's Bayou flows into the lateral canal. Dirt out of this canal made the public road between the Walt and Phillips farms. The road operates as a levee, and is a foot higher than it was before the construction of the lateral.

C. J. Collier, another witness for appellee, testified that he had known Brown's Bayou and the territory where it was located all of his life. The well-defined banks of Brown's Bayou stop after entering the Phillips farm. It then scatters; just flattens out. It crossed the road between the Phillips and Walt places, not with well-defined banks, but with the depression in the slope of the country; but it has followed the same channel all the time.

Other witnesses testified that two small ditches were cut on the farm of Phillips after the lateral was dug in order to carry the water from Brown's Bayou into the lateral.

Other testimony tended to show that the lands in the depression or swale caused by Brown's Bayou on part of the land of Phillips was cultivated.

While the evidence for appellant tends to show that the lateral was adequate to carry off the water as planned. the evidence for appellee tends to show that a lateral built through the land of Walt in a southeasterly direction would have given better drainage than the lateral in question. But, whether or not the lateral was located upon the best, cheapest and most available route, was a matter addressed to the judgment of the drainage commissioners at the time the lateral was constructed. It

was the duty of the commissioners to locate the drains upon lines that they deemed best to accomplish the object sought, and their determination in the matter is not the subject of collateral attack in a proceeding like this.

The Legislature may authorize that natural streams may be straightened, widened, and deepened, where, in the judgment of the drainage commissioners, the proposed system of drainage can be more effectively accomplished in that manner. *Terre Noire Dist. No. 3* v. *Thornton,* 93 Ark. 332.

It follows that the course of the natural flow of the water need not be followed and that the fact that the route intersects natural watercourses does not make it invalid. In assessing the benefits, the commissioners of the drainage system necessarily took into consideration the change of the natural flow of the water by the construction of the lateral in question and the advantage and disadvantage it would be to the lands bordering upon the lateral.

The result of my views is that it was the duty of the drainage commissioners to select the most available and practical route for the drainage ditches, and that, having decided that a lateral built between the Walt and Phillips farms and extending north to the main canal, providing for Brown's Bayou to flow into it, was the most available route, the landowners have no right, more than ten years afterwards, to change that route and readopt the old drainage.

It will be remembered that the dirt excavated in digging the lateral was thrown into an embankment which, although it became a public road, constituted a part of the drainage system. Hence appellee had no right to cut through it or in any other way to materially interfere with the system of drainage adopted by the drainage commissioners, and, if he wrongfully did so, appellant had the right to protect his lands by constructing the levee in question on his own lands.