HONEY v. THE BERTIG COMPANY.

4-6316                                    150 S. W. 2d 214

Opinion delivered April 28, 1941.

*Rhine & Rhine,* for appellant.

*D. G. Beauchamp,* for appellee.

HOLT, J. Appellant, J. C. Honey, is the owner of 80 acres of land in Greene county described as the west half of the northwest quarter, section 1, township 16 north, range 6 east. Appellee, The Bertig Company, owns an 80-acre tract adjoining appellant's land on the east.

About 25 years ago territory embracing these two tracts of land, together with adjacent lands, was organized into what is known as Johnson Creek Drainage District No. 2. This drainage district constructed a ditch which began about a mile north of the two tracts involved here, and extended, approximately in a straight line, in a southeasterly direction across the northeast corner of appellant's land and the northwest corner of appellee's land, thence on through and beyond appellee's land.

Prior to the construction of this drainage district a stream, or creek called "old Johnson Creek Run," entered appellant's land on the west side at a point about 300 yards south of the northwest corner and meandered its way east across appellant's land on to appellee's land for a distance of 238 feet, where the drainage ditch intersected it. From this point, the stream turned sharply to the right and meandered its way in a southeasterly direction over appellee's land until the Johnson Creek ditch was constructed to take care of the water in this stream. Sometime after the construction of the Johnson Creek drainage ditch, appellant, with the help of the other property owners, in order to straighten the channel of the stream, or the "old Johnson Creek Run," and to take

care of overflow and flood waters, dug a "scraper" ditch in almost a straight line east across his land to appellee's line, and for 238 feet across appellee's land into the Johnson Creek ditch. This "scraper" ditch varies in depth and width from approximately two feet deep and four feet wide where it enters appellant's land on the west to eight to ten feet deep and twenty feet wide where it empties into Johnson Creek ditch.

Johnson Creek ditch has a levee on either side about four feet high for its entire length. During flood waters this drainage ditch sometimes overflows, breaking the levee to the north of the lands of appellant and appellee here and overflows them. During such overflow the water flows into and backs into the "scraper" ditch and overflows it. On the south bank of the "scraper" ditch for a distance of 238 feet, where this "scraper" ditch crosses appellee's land to connect with the Johnson Creek ditch, appellee has constructed a levee about three or four feet high to prevent overflow or flood waters from flowing over his land to the south. Where the "scraper" ditch connects with the Johnson Creek ditch there has been placed a thirty-inch metal pipe equipped with a floodgate. This floodgate is closed when the Johnson Creek ditch is at high water stage and stops the flow of water from the "scraper" ditch into the drainage ditch.

After appellee constructed this 238-foot levee, appellant filed suit in the Greene chancery court seeking to force appellee to remove it, and also for damages from overflow to his land, alleged to have been caused by its construction, and for injunctive relief.

The trial court found the issues in favor of appellee. Appellant has appealed.

The rule of law is well established in this state that the waters of a natural stream, or watercourse, may not be so obstructed by dam, or otherwise, by a lower proprietor so as to cause the water to flow back to the detriment and injury of those above him. *Taylor* v. *Rudy,* 99 Ark. 128. 137 S. W. 574.

Many witnesses have testified in this cause and much testimony has been brought into the record. We think, however, that it could serve no useful purpose to set it out at length.

In addition to what we have already said, the record reflects that appellee's land lying immediately south of this 238-foot levee is approximately one-half foot lower than appellant's land lying immediately west and south of the west end of this levee. The remainder of the two tracts of land is almost level, there being but a slight drop from west to east. It is practically undisputed that there is no trouble with the water except when the Johnson Creek drainage ditch breaks to the north of the lands here involved, or overflows from excessive rains. We think the clear preponderance of the testimony shows that this short levee constructed by appellee is in no sense a dam or an obstruction, and that appellee has done nothing to obstruct the natural flow of water in the "scraper" ditch (a watercourse constructed, as indicated, to straighten and to take the place of the "old Johnson Creek Run") to appellant's damage. It tends to prevent the surface and overflow water from running south over appellee's land when the overflow becomes so great that the watercourse of the "scraper" ditch overflows its banks and flows south. The levee in question tends to confine the water in this "scraper" ditch or watercourse and to carry it into the Johnson Creek drainage ditch. Except during high water appellant's land is not overflowed.

The law is well settled in this state that a landowner has a right to protect his land from surface water, flood water and overflow, unless in so doing he unnecessarily injures another. In *McCoy* v. *Board of Directors of Plum Bayou Levee District,* 95 Ark. 345, 129 S. W. 1097, 29 L. R. A., N. S., 396, this court said:

"The question is therefore presented whether or not, for the protection of lands from inundation by the flood waters of a river, a levee may rightfully be built across depressions, swales and low places so as to prevent the escape of the flood water into surrounding low lands

sought to be protected; and also whether or not, in order to prevent the spread of flood water and to protect lands which would otherwise overflow, the building of a levee which has the effect of raising the water higher on the lands between the levee and the river calls for compensation to the owner of such lands thereby damaged. . . .

"The first inquiry would seem to be as to the characterization of flood waters overflowing a stream, to return again as they recede—whether they should be treated as surface water or as running water of the stream. But we are not sure that such an inquiry is essential to a solution of the question now presented, for, without calling it surface water, we may treat it like surface water or the waters of the sea, as a common enemy which any landowner or body of landowners or public agency may defend against without incurring liability for damages unless injury is unnecessarily inflicted upon another which, by reasonable effort and expense could be avoided. . . ."

The court there cites *Rex* v. *Commissioners,* 8 B. & C. 355, and says: "But the sea is a common enemy to all proprietors on that part of the coast, and I cannot see that the commissioners, acting for the common interest of several landowners, are, as to this question, in a different situation from any individual proprietor. Now, is there any authority for saying that any proprietor of land exposed to the inroads of the sea may not endeavor to protect himself by erecting a groyne or other reasonable defense, although it may render it necessary for the owner of the adjoining land to do the like? I certainly am not aware of any authority or principle of law which can prevent him from so doing. . . . I am, therefore, of opinion that the only safe rule to lay down is this: that each landowner for himself, or the commissioners acting for several landowners, may erect such defenses for the land under their care as the necessity of the case requires, leaving it to others in like manner to protect themselves against the common enemy."

And in *Leader* v. *Mathews,* 192 Ark. 1049, 95 S. W. 2d 1138, this court said: "The waters causing the

most serious trouble in this case are overflow water when waters are high, or they are surface waters at other times, and against either one of these, a landowner has the right to defend himself as against a common enemy, without rendering himself liable for damages, unless he unnecessarily injures another for his own protection.''

It is our view that the great preponderance of the testimony in this case supports the findings of the chancellor, and the decree is, therefore, affirmed.