MILLER *v.* CRUTCHFIELD

5-3895                                                405 S. W. 2d 269

Opinion delivered June 6, 1966
[Rehearing denied July 25, 1966.]

*Highsmith & Harkey,* for appellant.

*Murphy, Arnold & Purtle* and *Guy Wiley,* for appellee.

ED. F. McFADDIN, Justice. This is a suit brought by an upper riparian owner against a lower riparian owner for removal of a dam which obstructed the ordinary flow of a natural watercourse. The appellants, Mr. and Mrs. Miller, filed this suit against the appellee, Mr. Crutchfield, to require him: (a) to remove or lower the level of a dam he had constructed which caused water to cover a portion of the Miller lands; and (b) to pay for damages caused by such flooding.

Long Creek, in Izard County, is a natural water-

course which flows northeasterly through the lands of the Millers to and through the lands of Crutchfield and then through lands of other owners. In 1961 Crutchfield decided to construct a dam on his land so as to impound the waters of Long Creek in order to create a lake of 25 to 30 acres. Crutchfield selected a place where it would require a dam to be only 500 feet long, whereas, if he had gone further down stream on his own land, a much longer dam would have been required. Before commencing the dam, Crutchfield obtained a release from the lower riparian owner, Mr. Melton; and undertook to obtain a release from the Millers as the upper riparian owners. The Millers refused to execute any written release; and the testimony is in hopeless confusion as to whether the Millers orally agreed to any release.[1]

Crutchfield testified: ''I was determined to build a dam''; so, regardless of the attitude of the Millers, Mr. Crutchfield began the construction of his dam in late 1961 and completed it in December 1962. As a result of the dam, the lake that Crutchfield caused to be formed extended up Long Creek on to the Miller land, covering from a half acre to three and one-half acres, according to the season of the year and according to the testimony of the different witnesses. At all events, part of the lake flooded the Miller land and the water, three to six feet deep, caused: (a) loss of timber; and (b) loss of use of a portion of the Miller land by the soil becoming soggy.

On May 26, 1964, the Millers filed this suit, seeking: (a) a mandatory injunction to require Crutchfield to remove the dam, or enough of it to prevent damage to the Miller land; and (b) a judgment for damages already sustained.[2] As to the mandatory injunction, the plaintiffs prayed:

---

[1] The decree of the Chancellor impliedly found that the Millers never agreed to any such release, and that point will be discussed when we consider the appellee's cross appeal.

[2] The Trial Court awarded the Millers damages in the amount of $208.65; and on this appeal neither party complains of the award of damages or the amount thereof.

"Wherefore, the plaintiffs ask that a mandatory injunction be issued by this court against the defendant requiring the defendant to take such acts as will place the stream bed of Long Creek in such position that its normal flow prior to the damming is resumed; that the defendant, his agents, servants and employees, be permanently enjoined after the defendant is mandatorily required to rectify this damage from further damming said Long Creek to the plaintiffs' detriment; . . ."

Crutchfield's defenses were: (a) that the Millers were benefitted rather than damaged by the lake; (b) that the Millers had orally agreed that Crutchfield could construct the dam; and (c) that the Millers, after notice that Crutchfield was constructing the dam, sat by for over two years and allowed him to expend money for such construction, so they were guilty of laches and are estopped from maintaining this suit. A lengthy trial was conducted in the Chancery Court and resulted in a decree in which the learned Chancellor found:

"That the defendant has impounded the flow of Long Creek, which is found by this court to be a natural watercourse, so as to cause the waters of Long Creek to back up past the fence dividing the plaintiffs' land from defendant's land and to overflow over and onto lands of the plaintiffs, and that this overflow has caused damages to the plaintiffs in the amount of $208.65, as of June 3, 1965.

"That the defendant has no license or easement, express or implied, to so encroach on the lands of the plaintiffs, that the plaintiffs are not barred by laches or estoppel from a removal of the encroaching waters, and that a mandatory injunction should be issued and the defendant directed to lower the obstruction placed by him on Long Creek so that the encroaching waters will not overflow onto the lands of the plaintiffs for a longer period than twenty-four (24) hours at any one time."[3]

[3] The decree contained this further language:
". . . that a mandatory injunction be and is hereby issued and

Even though the Millers had won a victory, nevertheless they have appealed to this Court on this one point:

"That the Court erred in allowing the defendant to continue to interfere with and impede the normal flow of a natural watercourse so that the water can fill up the bed of the watercourse on the land of the plaintiffs and also cover the land of the plaintiffs for periods up to 24 hours at any one time."

Because of the appeal by the Millers, Crutchfield has cross appealed, urging:

"The Trial Court should not have issued any injunction against appellee.

"A. The appellee was granted an oral license or easement, either expressly or by implication to flow the lands of appellants which was executed and which is enforceable.

"B. The appellants were and are estopped by their acts and failures to act and, therefore, the injunction shoud not have been issued."

I. *The Direct Appeal.* We clearly recognize and declare the right of an upper riparian owner of a natural

the defendant is enjoined and directed to lower the obstruction placed on Long Creek by him so that the impounded waters will not back up past the division fence between the lands of the plaintiffs and the lands of the defendant and overflow onto the lands of the plaintiffs for a longer period than twenty-four (24) hours at any one time; that the defendant will pay all of the costs of this action; and the Court shall maintain continuing jurisdiction of this cause for such further orders as may be necessary and proper in the premises. That the defendant is not restrained from interfering with the natural flow of Long Creek and/or causing the impounded waters to back up in the bed of Long Creek past the fence dividing the parties' lands so long as he does not cause Long Creek to overflow its banks and the water to remain on plaintiffs' land longer than a period of twenty-four (24) hours at any one time."

watercourse to have equity order a lower riparian owner to remove obstructions he has placed in a watercourse which have the effect of causing waters so impounded to encroach on the lands of the upper riparian owner, or to cause the natural watercourse to overflow in times of high water more than it did before the erection of such obstruction. Some of our cases on this point are: *Turner v. Smith,* 217 Ark. 441, 231 S. W. 2d 110; *Walt v. Phillips,* 166 Ark. 163, 266 S. W. 71; *Monteith v. Honey,* 135 Ark. 407, 205 S. W. 812; and *Taylor v. Rudy,* 99 Ark. 128, 137 S. W. 574.

In practical effect, the Chancery decree is in accordance with these cases. The appellant objects to the 24-hour clause in the decree; but the evidence shows that in times of heavy rains and high water Long Creek did overflow its banks even before the Crutchfield dam was built.

One witness, Mr. H. C. Johns, had owned the Miller farm from 1941 to 1946. He testified:

"Q. . . . During those years, after a spring rain, you have seen the creek out of its banks, haven't you?

"A. Yes, sir.

"Q. And you have seen it cover that bottom, haven't you?

"A. Yes, sir, I have."

Another witness, Fred Beach, a former owner of the Miller lands, testified:

"Q. . . . Will you tell the court whether or not, during the time you owned the farm and prior to the time Crutchfield Lake was built, the lowland ever flooded?

"A. During extremely rainy seasons, why some of the bottom land did flood."

Another witness, John Tomlinson, who grew up on the Miller lands, testified:

"A.  Well, like it's been said already, in big rains it would at times get out over the meadows."

The 24-hour provision was a practical solution of a difficulty. The entire destruction of the Crutchfield dam would not have prevented the Miller land from overflowing in times of heavy rains and high water. The Chancellor, using his practical experience, placed the 24-hour provision in the decree. In view of what will hereafter be said about the attempted settlement, we believe full equity can be obtained by appellants if they are troubled in the future by the waters from the dam, and we believe that our orders regarding remand will give the appellants the full relief to which they are entitled by law.

II.  *The Cross Appeal.* As to the appellee's cross appeal, little need be said. As previously remarked, the evidence is in hopeless dispute as to whether the Millers orally agreed to the construction of the dam. The burden was on Mr. Crutchfield to prove such agreement; and the Trial Court, after seeing the witnesses and hearing them testify, held against Mr. Crutchfield; and we cannot say that the finding of the Chancellor on this point is against the preponderance of the evidence. Likewise, as to laches and estoppel, the Millers did not know until the waters of the lake were up to the level of the dam just where the waters would be on their land. They did not cause Crutchfield to spend his money building the dam: he did that at his peril. Within a reasonable time after the waters flooded the Miller land, this litigation was filed. So we find no merit to the cross appeal.

III.  *The Attempt At Settlement Which Occurred After The Entry Of The Decree.* The appellee filed a motion in this Court to dismiss the appeal. At our invitation, the attorneys for both sides appeared before us in regard to such motion, and we passed the consideration of the motion until this appeal was reached on its

merits. We now take occasion to state that all the attorneys have acted in the finest traditions of the profession, in their dealings with the Court, with each other, and in representing their clients; and we commend the attorneys. The situation regarding the settlement arose in this manner:

After the Chancery decree was rendered, the attorneys for all parties understood that there would be no appeal. Consequently, appellee Crutchfield lowered his dam in an effort to comply with the decree, and was ready to pay the damage judgment and costs. But within the time allowed by law, the Millers elected to appeal. Mr. Crutchfield contends that he was led to believe that the Millers would not appeal and therefore he complied with the decree of the Court in lowering his dam, and that since he had lowered his dam in the honest belief that the Millers would not appeal, their appeal should be dismissed.

We cannot say that both of the Millers knowingly waived their right of appeal; but we think the effort toward settlement has proved valuable in this case. If the appellee Crutchfield has, in fact, lowered the water level of his lake so that no more water will encroach on the Miller land and so that Long Creek will not overflow from heavy rainfalls any worse in the future than it did before the dam was constructed, then the Millers have received the injunctive relief for which they prayed. Of course, Crutchfield must pay the damage judgment and all costs of the Chancery Court. On the other hand, if Crutchfield's post-chancery-decree-effort has not brought about such a result,⁴ then the Millers are entitled to further relief in the Chancery Court.

We therefore affirm the decree as rendered by the Chancery Court, with the cost of this appeal to be paid

⁴The results which the decree awarded the Millers must necessarily be that the water level of the lake has to be lowered so that no water from the lake will encroach on the Miller land and so that Long Creek will not overflow from large rainfalls any worse than it did before the dam was constructed.

equally; and we remand the cause to the Chancery Court to reinvest it with continuing jurisdiction to see that the Millers receive the relief to which they are entitled. If the dam has not been sufficiently lowered to accord them the relief herein mentioned, then, on proper showing, the Chancery Court will grant them such relief and will award them damages occurring since the rendition of the former decree.

Affirmed and remanded.

WARD, J., dissents.

PAUL WARD, Justice, dissenting. The pertinent part of the trial court's order from which appellants' appeal reads:

". . . the defendant (is) directed to lower the obstruction placed by him on Long Creek so that the encroaching waters will not overflow onto the lands of the plaintiffs *for a longer period than twenty-four* (24) *hours at any one time.*" (Emphasis supplied.)

Appellants object to the part which is emphasized, and I think they are justified in doing so.

To my mind, to state the objection is to answer it. If the stream (in its natural state) overflowed for twenty-four hours "X" number of times, it seems axiomatic that it would overflow more times as a result of the dam.