The Honorable Wayne Dowd State Senator P.O. Box 2631 Texarkana, Arkansas 75502
Dear Senator Dowd:
This is in response to your request for an opinion on three questions involving a drainage dispute in Miller County, Arkansas. You have enclosed a photograph of the particular location giving rise to the drainage dispute and have outlined the facts as follows:
 A rural drainage district in Miller County, Arkansas has certain geographical boundaries. There is a natural drainage ditch which has been improved by the drainage district and within the geographic boundaries of the drainage district there is an easement controlling same. Downstream from the end of the drainage district's geographical jurisdiction, a private landowner has placed two large culverts in the natural drainage on the private landowner's own property and erected barriers or impediments which back up the water in the natural drainage district.
 The purpose of the impediments in the ditch was to provide a crossing of the ditch and also to back water upstream to an area also owned by the private landowner and from which it pumps water into a natural lake for storage. I am advised that the impediment in the ditch backs water onto lands within the geographic jurisdiction of the drainage district and onto other private landowners.
You have posed the following questions with regard to these facts:
 1. Does the private landowner have the legal right to impede drainage in the natural drainage ditch to the extent that it impounds water onto adjacent private landowners?
 2. Does the private landowner have the legal right to impede drainage in the natural drainage ditch to the extent that it backs water into upstream drainage areas under the jurisdiction and control of the drainage district, and thereby causes drainage of surface water to proceed at a slower pace; and
 3. What legal rights if any does the drainage district have to compel removal of the impediment to drainage situated on the private landowner's property?
I must note from the outset that the resolution of the questions you pose will ultimately require a determination of issues of fact. This office, in issuing formal advisory legal opinions, cannot act as a factfinder. In addition, I am prohibited by statute from the private practice of law (see A.C.A. § 25-16-701 (Repl. 1992)), and as such, cannot offer legal advice to private parties concerning their rights in private disputes. Because the questions you pose, however, involve the rights and responsibilities of a public drainage district, which is governed by the statutes of this State, I will set out below some of the applicable law surrounding your questions. Interested parties, however, must consult legal counsel of their choosing to determine the applicable law and facts and pursue their judicial remedies.
In response to your first and second questions, it has been stated by the Arkansas Supreme Court on many occasions that "one riparian landowner along a non-navigable stream has no right to obstruct the natural flow of said stream to the detriment or damage of other riparian owners." Seee.g., Naylor v. Eagle, 227 Ark. 1012, 1015, 303 S.W.2d 239 (1957) andDeVore Farms, Inc. v. Butler Hunting Club, Inc., 225 Ark. 818, 823,286 S.W.2d 491 (1956). It has also been specifically held that "the waters of a natural stream or watercourse may not be so obstructed by a lower proprietor as to flow back to the detriment of those above him." Monteithv. Honey, 135 Ark. 407, 205 S.W. 812 (1918). See also, Turner v. Smith,217 Ark. 441, 445, 231 S.W.2d 110 (1950) (stating that: "Undoubtedly, [a landowner] may maintain a reservoir on his property, but in doing so he cannot flood his upland neighbors by blocking the flow of natural watercourses"). See also St. Louis Southwestern Ry Co. v. Mackey,95 Ark. 297 (1910) (where a railroad builds across or alters the flow of a natural drain, it must make suitable culverts, bridges or other provisions for carrying off ordinary water flows and any extraordinary flows that could reasonably have been foreseen); and St Louis, IronMountain Southern Railway Company v. Walker, 89 Ark. 556 (1909) (same).
An action may be maintained in chancery court to enjoin the obstruction.See generally, Devore, supra; Monteith, supra; Turner, supra; Boyd v.Greene County, Arkansas, 7 Ark. App. 111, 644 S.W.2d 615 (1983); Solomonv. Congleton, 245 Ark. 487, 432 S.W.2d 865 (1968); and Taylor v. Rudy,99 Ark. 128, 137 S.W. 574 (1911). In addition, an action to recover damages for past injuries may be maintained. As stated in Malvern Gravel Companyv. McMillan, 200 Ark. 386, 393, 139 S.W.2d 390 (1940) "any act which causes a diversion of such natural flow of water and inflicts injury creates a right of action. In other words, a landowner who sustains injury by reason of the diversion of a natural water course is entitled to recover damages against the one who caused it."
In addition, it appears that the obstruction of a natural watercourse is a criminal offense. See A.C.A. § 5-72-106 (Repl. 1993), and generally, A.C.A. § 5-72-105. The local prosecuting attorney would presumably have authority to determine whether the crime has, as a factual matter, occurred and to bring misdemeanor charges.
Factual questions may arise, however, as to whether the "natural drain" in question is a "watercourse" for purposes of applying the rules of law set out above. As was most recently stated in Boyd, supra:
 As early as 1882, our Supreme Court has recognized the common law `natural flow' rule that `each proprietor upon running water, flowing in a definite channel, so as to constitute a watercourse, has a right to insist that the water shall continue to run as it has been accustomed; and that no one can obstruct or change its course injuriously to him without being liable in damages.' [Citation omitted.] Where no watercourse exists, Arkansas has adopted the common law rule that a landowner is justified in defending against surface runoff without incurring liability for damages unless injury is unnecessarily inflicted upon another which, by reasonable effort and expense, could be avoided. [Citations omitted.] Which of the two, [sic] foregoing rules is applicable to the facts at bar depends upon whether a watercourse exists across appellant's land. If one exists, appellants have no right to obstruct the flow of water within the watercourse. However, if no watercourse exists, the appellants have a right, without incurring liability for damages, to defend themselves against surface water unless they unnecessarily injure or damage another. [Citation omitted.]
7 Ark. App. at 112.
The definition of a "watercourse" was reiterated in Boyd, as follows:
 [A] running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel, having a bed and banks, and usually discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or other extraordinary causes.
7 Ark. App. at 112, citing Boone v. Wilson, 125 Ark. 364, 188 S.W. 1160
(1916).
If, therefore, the body of water which is the subject of your request is a "natural watercourse" as a matter of fact, the common law and statute set out above will apply.[1] Additional factual questions may arise, however, as to whether the purported obstruction of a watercourse is the actual cause of the injury to adjacent or upland riparian landowners. The question of causation of the damage has been termed "purely factual" by the Arkansas Supreme Court. See Naylor, supra, and DeVore, supra.
Thus, in response to your first and second questions, depending upon the facts, the private landowner may have no right to impede drainage upon a natural watercourse, and landowners aggrieved by the alleged obstruction may pursue their judicial remedies, either in the form of requesting an injunction to halt the obstruction, or by requesting damages for injuries sustained. Although the issue is not entirely clear, it would also appear that the public drainage district in question would have standing to sue to prevent the obstruction. See generally, Lee-Phillips Drainage Districtv. Beaver Bayou Drainage District, 226 Ark. 105, 289 S.W.2d 192 (1956). Aggrieved parties may also alert the prosecuting attorney and request that criminal charges, if warranted, be filed under A.C.A. § 5-72-106.
In response to your third question, if the alleged obstruction impedes the efforts of the upstream drainage district, it appears as stated above that the district would have standing to sue in chancery court to halt the obstruction. Presumably the district could also request the prosecuting attorney to take action under the criminal statute cited above. It is unclear whether the district would have authority to enforce any specific statutes or any of its own rules and regulations regarding the obstruction of such ditches if the ditch in question is outside its geographic boundaries. See n. 1, supra. One such statute may be relevant, however. Arkansas Code Annotated § 14-121-808 gives certain drainage districts the authority to construct ditches or do other work on land beyond the jurisdiction of the district. It is conceivable, therefore, that the district in question could act under this provision to make the improvements it deems necessary to ensure the proper drainage of water in its district. This statute provides for condemnation of a right-of-way to accomplish this purpose.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It does not appear from a review of the facts your have presented that the body of water at issue is actually a part of the improvements made by the public drainage district, or within the geographic boundaries of such district. It should be noted that the Arkansas Supreme Court has held that one who obstruct or dams a publicly improved drainage ditch and thereby causes the flooding of upland neighbors is liable in damages for the injury he causes. Adams v. Adams, Executor, 228 Ark. 741,310 S.W.2d 813 (1958). It would also appear, if the obstruction was to a publicly improved drainage ditch, that the drainage district would have authority to request enforcement of the statutes pertaining to the obstruction of such ditches, and to enforce its rules and regulations governing the same. See e.g., A.C.A. § 14-121-105 (1987) (making obstruction of such a ditch a misdemeanor and making the perpetrator liable to the district for double the cost of removing the obstruction); and A.C.A. § 14-121-807(e) (making the construction of any bridge contrary to the rules of the drainage district a misdemeanor). It does not appear, however, that these provisions would apply when the drainage at issue is a natural drainage ditch and not a ditch improved or otherwise under the jurisdiction of the district.